BERT M. WULIGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19760. Promulgated March 31, 1930.

*Bert M. Wuliger, Esq.,* pro se.
*Otis J. Tall, Esq.,* for the respondent.

OPINION.

MORRIS: On June 28, 1929, the Board promulgated its opinion in the above entitled proceeding, in which it determined and held taxable the profit derived by the petitioner from a transaction by which he sold certain shares of capital stock and executed a quitclaim deed to certain property in consideration of the payment to him of $100,000. It also held that the return filed by the petitioner for the year 1920 was false and fraudulent, thereby subjecting him to the payment of a penalty of 50 per cent of the amount of the proposed deficiency. *Bert M. Wuliger,* 16 B. T. A. 1220.

On August 13, 1929, the respondent filed his notice of settlement and statement of recomputation, showing therein a deficiency in tax of $31,809.24, and penalty of $15,904.62, and thereafter the proceeding was calendared for hearing on September 11, 1929, which said hearing, upon motion of the petitioner, was stricken from the day calendar of that date and placed upon the day calendar of October 14, 1929, for hearing under Rule 50.

On September 5, 1929, the petitioner filed a motion for rehearing, reargument, and reconsideration by the entire Board on the record, on the grounds, among others, that (a) the findings and opinion of the Board were not in accord with the record, (b) the decision was based upon perjured evidence of witnesses, (c) the deposition of one Arthur H. Pollak was disregarded, (d) the decision charges the petitioner with having committed fraud not supported by the record, and (e) there are outstanding errors in the decision which are set forth specifically in a certain memorandum brief filed and made a part of said motion. Upon due consideration of said motion,

the Board, on September 19, 1929, ordered the proceeding restored to the day calendar of October 2, 1929, for further hearing and reargument.

Pursuant to the aforesaid order a rehearing was held on October 2, 1929, at which time the petitioner appeared as counsel in his own behalf and as his sole witness. The entire hearing was devoted to an attempt upon the part of the petitioner to establish his confidential relationship with his father, to impeach the testimony of witnesses offered in his own behalf at the prior hearing, to show his illness in 1920, and to show error upon the part of the Board in certain particulars which will be discussed hereafter, in so far as they may be pertinent and material. He also offered certain exhibits to support his allegation that perjury had been committed by witnesses at the former hearing.

Upon consideration of all the allegations contained in the petitioner's brief supporting his motion and the testimony and evidence of record, we are of the opinion that the findings of fact set forth in our opinion of June 28, 1929, should be modified in each of the following particulars:

The violent quarrel referred to at page 1221 of the reported opinion took place on March 12, 1920, instead of March 18, 1920.

The third sentence beginning on page 1222 of the said report should read: " It had to meet its note to the First National Bank of Cleveland, and had heavy payments to meet under the so-called Kroehler contract entered into by the petitioner and his brother Frank acting for the Ohio Mattress Co."

The fifth sentence beginning on page 1222 of the reported opinion should be amended to read that the petitioner assigned his interest in the Kroehler contract to Moris Wuliger instead of Ohio Mattress Co.

The seventh sentence on page 1222 of said report should be amended to read: " Subsequently additional payments were made by or on behalf of the Ohio Mattress Co. on the Kroehler contract and for merchandise in connection therewith, which payments increased the equity of the company in this deal to about $36,000."

The finding of fact on page 1223 of said report that the March 1, 1913, value of the 24 shares of stock was $6,910 should be stricken and there should be added in its stead, " The stipulated cost of the 24 shares of stock was $6,910."

In so far as the language of the original opinion itself is inconsistent with the modifications hereinabove referred to, it too shall be amended in those particulars.

That part of the opinion on page 1225 of the printed report which reads, "At the hearing he admitted that $29,090 of the amount received was taxable income and that his return was in error in not including the same as taxable income," should be stricken.

The petitioner points to a reference in the findings of fact that " Knowledge of the payment of the note came to the petitioner on

May 17, 1920," and he contends that there is no such definite date in the record. While that may be true, certain inferences were drawn from the testimony of record and that date was found as a fact. No testimony or evidence has been offered to the contrary and, therefore, we can see no reason for finding differently.

The petitioner complains of statements in the reported opinion aforesaid that, " The petitioner refused to accept any note for the payment of the money or even to receive a check." The petitioner contends that there is nothing in the record to support such a conclusion. Granted that there is no express statement in the record that either a note or check was actually tendered and refused by the petitioner, there is but one logical inference to be drawn from the testimony of record, which shows most conclusively that the petitioner demanded cash in this transaction and that he would accept nothing else as a substitute therefor.

The petitioner complains of the reference in the opinion that he and his father were " hostile " to each other notwithstanding the testimony of his father that he was never on unfriendly terms with his children. We think the record shows very satisfactorily that the petitioner's father was not hostile toward him, and in that particular our former opinion erred, but certainly there is no showing that there was no hostility on the part of the petitioner against his father; indeed, quite the contrary appears when all of the surrounding circumstances are taken into consideration. It was not an active hostility possibly, but there was certainly a strained relationship amounting to ill feeling not ordinarily existent where father and son are concerned.

The petitioner complains further that the decision did not refer " to the most suspicious circumstances surrounding the $64,000 entry as of June 1, 1920, on the cash journal of the Ohio Mattress Co., * * * which is unsupported by any proof whatsoever, because Frank Wuliger, one of the adverse witnesses, was unable to produce the canceled and paid checks * * *." He also complains that the decision fails to refer " to the numerous instances of fraud perpetrated upon the Government by the Ohio Mattress Co. and Frank Wuliger * * *." The question of the Ohio Mattress Co.'s tax liability was not before us, nor was that company a party to this proceeding. The petitioner subpœnaed the books and records of that company and offered them in evidence in support of his contentions. If the particular entry complained of did not correctly set forth the true state of affairs, that fact should have been brought to the attention of the Board by affirmative evidence. The Ohio Mattress Co. was not called upon to establish the authenticity of this entry, nor do we see any justification for drawing any inference from the failure of that company to produce canceled checks which may or may not

have disclosed the incorrectness of that entry. We are satisfied that the failure of the Ohio Mattress Co. to produce those checks was because they could not be located.

The allegation of the petitioner that the decision of the Board was based upon perjured evidence of witnesses is wholly unfounded and unsupported by the record. It is true that some slight errors may have been made in their testimony, which covered transactions occurring many years ago, but we have every reason to believe, however, that the witnesses were thoroughly honest in their endeavor to shed light upon the transaction in controversy.

With respect to the contention of the petitioner that the deposition of Arthur H. Pollak was disregarded, we find that his testimony was offered primarily to show that the petitioner's father had advised him that he intended to give the petitioner $100,000 that he might go into business. The record discloses, as we stated in our former opinion, that the petitioner admitted that his father never informed him that the amount in question was a gift, and, furthermore, the petitioner's father denied, under oath, as we also pointed out in our opinion, that he in fact intended to make a gift. Therefore, it can readily be seen that Pollak's testimony was of little or no value for the purpose intended.

Upon stipulation entered into between the parties at the hearing of October 2, aforesaid, the statement on page 1221 of the reported case that, " The amount paid was charged to the petitioner on the books of the Ohio Mattress Co.," should be supplemented by adding " which amount was later credited to the petitioner, the account of the Champion Bed Spring Co. being charged and that of B. M. Wuliger credited, bearing the notation ' part purchase price paid on January 2.' "

Because of the disturbed relationship existing between the petitioner, his father, and his brother, who were witnesses for him, and because of the innumerable errors alleged to have been committed in the Board's original opinion, we have exercised unusual care and diligence in the reconsideration of our former opinion, and not only have we considered the additional evidence offered upon rehearing, but have made a thorough examination into the record originally made, as a result of which we are satisfied and are constrained to hold, notwithstanding the said new evidence and the modifications of the findings of fact and opinion indicated hereinabove, that the conclusions reached were correct, and it is, therefore, sustained as promulgated.

Reviewed by the Board.

*Decision will be entered under Rule 50.*