JOHN KEHOE AND WIFE, SARAH KEHOE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64609.   Promulgated March 10, 1936.

*R. M. O'Hara, Esq., Leo W. White, Esq.,* and *W. H. Gillespie, Esq.,* for the petitioners.

*M. B. Leming, Esq.,* and *H. E. Lucas, Esq.,* for the respondent.

OPINION.

TURNER: It is admitted that the assessment and collection of the deficiency involved in this proceeding is barred by the provisions of section 277 (a) (1)[1] of the Revenue Act of 1926, unless the return filed by the petitioners for the taxable year was false and fraudulent with intent to evade tax, in which case the tax may be assessed at any time, under the provisions of section 278 (a)[2] of the same act. It is also admitted that the petitioners executed a final closing agreement in the form prescribed by section 1106 (b)[3] of the Revenue Act of 1926 and that the assessment and collection of the deficiency here in question is prohibited by that agreement, unless there was "fraud or malfeasance or misrepresentation of fact materially affecting the determination and assessment" of the tax covered by the agreement.

In support of his allegations that the income tax return for the calendar year 1925 was false and fraudulent and the further allegation that petitioner John Kehoe was guilty of fraud, malfeasance, or misrepresentation of facts materially affecting the determination and assessment which formed the basis for the said final closing agreement, the respondent presented in evidence numerous documents and

---

[1] SEC. 277. (a) Except as provided in section 278—

(1) The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

[2] SEC. 278. (a) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

[3] SEC. 1106. (b) If after a determination and assessment in any case the taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary. that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, emloyee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States.

the oral testimony of a great number of witnesses. The petitioners presented no evidence or proof of any kind. Petitioner Sarah Kehoe rested her case on a motion for no deficiency on the respondent's admission that she derived no income from the brewery business and the further admission that she was not guilty of fraud in connection with the assessment and collection of the tax thereon. Petitioner John Kehoe asked for a finding of no deficiency upon the ground that the respondent had failed to sustain the burden of showing fraud, malfeasance, or misrepresentation of fact in connection with the final closing agreement, and, further, that he had not sustained the burden of showing that the original return for 1925 was false or fraudulent.

The basic question in this case is one of fact and is whether or not petitioner John Kehoe was the real party in interest in the operation of the brewery at Kingston, Pennsylvania, commonly known as Bartels Brewery, but often referred to during the period here in question as the Patrick F. McGowan Brewery. It is strenuously argued that the respondent has failed to show any connection between petitioner John Kehoe and the operation of the brewery business, except through the testimony of Patrick F. McGowan, whose credibility is seriously questioned. On the other hand, the respondent has made much of the fact that petitioner John Kehoe was present throughout the hearing and failed to take the stand to refute the allegations made against him and to deny in any way whatsoever the statements made by the various witnesses which tended to show that he was the operator of the brewery.

Regardless of whether or not McGowan's testimony, standing alone, would be considered sufficient to sustain the respondent's allegations, and regardless of any inferences that might be drawn from the failure of the petitioner to take the stand or to present other evidence, the facts, circumstances, and happenings described and disclosed by documentary proof and the testimony of witnesses convince us that the petitioner was the real party in interest in the operation of the brewery during the taxable year. Furthermore, we had the opportunity to observe the witness McGowan on the stand, and we have carefully examined the transcript of his testimony, and we believe that McGowan told us the truth. Many of the specific events and happenings which make up the entire picture have been set forth in our findings of fact. Others might be described, such as the conference held in the office of Evan C. Jones, on the night in December 1924, just prior to the hearing on the revocation proceedings, when McHugh, the known manager of the brewery, introduced John Kehoe as his boss to the witness Mullaghy, yardmaster for the Lackawanna Railroad, who had been called in for a discussion of the circumstances surrounding the seizure of the

four cars of beer in the railroad yards. However, there is no doubt in our minds that John Kehoe owned the brewery business, and a further recital of events or review of evidence to show his connection therewith would serve no useful purpose.

Further, the petitioner argues in substance that there is no direct evidence of the actual payment to him of money during the taxable year from the brewery or any other source and that, regardless of the facts and circumstances that may be disclosed by the record, the respondent's charge of fraud fails. It is, of course, elementary that actual physical payment of money to the petitioner is not essential to a determination against him. We have found as a fact that the brewery business was his, and that McHugh, McGowan, and others were his employees. Any of the proceeds of the brewery business coming into their hands would be chargeable to the petitioner, regardless of whether he ever had actual physical possession of the money. It should also be kept in mind that the operation of the brewery at the time and in the manner described in this proceeding was extremely hazardous. The margin of profit was necessarily great, and success was largely dependent upon the ability of those so engaged to make no direct record in writing or otherwise of the things done and the transactions completed. It does not follow, however, that the absence of the usual written records and customary books of account showing the receipt of income means the absence of other proof equally as positive and convincing as any written record that might be presented.

That such is the situation here is clearly shown by a résumé of some of the known facts. We know that the near beer business was a front for the under-cover manufacture and sale of the so-called high powered beer; that the records kept at the brewery covered only the near beer business, the proceeds of which were not sufficient to keep the brewery open; that the freight on the high powered beer shipped by rail was in excess of the entire sales shown on the brewery books; that the employees were paid a cash bonus of $8 weekly, which was furnished by McHugh, and was not reflected in the books of account; that, in spite of a loss of $82,325.97, reflected by the brewery books for the year 1925, on a gross business of $97,713.19, the petitioner was actively engaged in securing and did secure a renewal of the permit for operations in 1926; that on such a business only approximately $30,000 is disclosed in the bank records during the taxable year; that with the exception of one month in 1924, McGowan's salary for the years 1924, 1925, 1926, and 1927 was paid in cash either by the petitioner or McHugh; that Harry Kenny paid cash to the petitioner for eight carloads of beer bought by him in 1924; that the price of high powered beer, in 1925, ranged from $12 to $17 per barrel; that approximately 885 carloads of such beer were

shipped from the brewery over the Delaware, Lackawanna & Western Railroad Co. lines in 1925; that freight on these shipments in the approximate amount of $98,648.60 was paid in cash by McHugh, Kearns, and Tom Kehoe; that a carload of beer was approximately one hundred barrels, and by applying the minimum price of $12 per barrel, these shipments represented sales aggregating at least $1,062,-000; and, further, we know that a beer broker by the name of William V. Loughran, of Scranton, Pennsylvania, often during the taxable year sent envelopes which at times were known to contain money to the petitioner's office in Pittston. The messenger was told to deliver them to McHugh, but on one occasion they were accepted by Tom Kehoe, the petitioner's brother.

These and other facts previously stated in our findings lead us to the conclusion that large amounts of income were received in cash by or for the petitioner from the operation of the brewery in 1925, and that the receipt of this income has never been reported nor disclosed by him. To hold otherwise would be to ignore the obvious. He not only failed to disclose and report in his return the income from the operation of the brewery, but has at all times denied and still denies any connection whatever with its operation. We accordingly hold that the return of petitioner John Kehoe for 1925, was false and fraudulent with intent to evade tax and that under the provisions of section 278 (a), *supra*, the tax may be assessed at any time.

We further hold that the facts disclosed definitely show fraud, malfeasance, and misrepresentation of facts materially affecting the determination and assessment of the tax covered by the final closing agreement and that the respondent, acting with the approval of the Secretary of the Treasury, was justified in going behind the said closing agreement in making the determination which forms the basis of this proceeding. *Holmes & Janes, Inc.*, 30 B. T. A. 74. We have found that the petitioner, with intent to evade tax, failed to report in his return income received from the operation of the brewery and on the record it is apparent that he made no disclosure of such income at the time of executing the closing agreement, nor at any other time. While the filing of a return and the signing of a closing agreement are separate and distinct and fraud in one does not necessarily indicate fraud in the other, the same or a continuing act, that of wilfully concealing income, may be, and on the facts in this case, is a sufficient basis for finding that the return was fraudulent with intent to evade tax and further that there was a misrepresentation of a material fact in the execution of the closing agreement. Cf. *Thomas J. Ingram*, 32 B. T. A. 1063, and *Ethel H. Hoge et al., Executors*, 33 B. T. A. 718.

The petitioner contends that the respondent has not only the burden of proving fraud in order to overcome the defense that the period within which the tax may be assessed has expired, but also has the burden of proving the amount of the tax. Or, in other words, it is the petitioner's contention that in cases where the respondent charges fraud and the burden of showing fraud is placed upon him by the statute, his determination of a deficiency is not prima facie correct as in cases where fraud is not involved. In support of this contention the petitioner relies upon *Taplin* v. *Commissioner*, 41 Fed. (2d) 454; *Budd* v. *Commissioner*, 43 Fed. (2d) 509; and *Central Union Trust Co. of New York, Executor*, 25 B. T. A. 757. These cases are not in point. In the first case cited, it does not appear that fraud was pleaded and the court held that the petitioner had presented plausible testimony showing error in the determination of the deficiency and that this testimony had not been contradicted except by inference. In the two remaining cases the respondent failed to sustain the burden of proving fraud and there was no occasion to consider and determine the question here raised by the petitioner. In this case the respondent has sustained that burden. While it is usually true that in order to show that a return is false and fraudulent with intent to evade tax, it is necessary to prove the receipt of income not reported by the taxpayer in such return, but, once it is shown that the return is false and fraudulent, the burden of proving the respondent erred in determining the deficiency is on the petitioner. The issues are clearly separate. *L. Schepp Co.*, 25 B. T. A. 419, 436. Here the petitioner introduced no evidence to show that the amount of the deficiency as determined by the respondent is erroneous, but elected to stand on the fraud issue alone. Having resolved the fraud issue against the petitioner, the respondent is affirmed on this issue.

Furthermore, we are of the opinion that, even if the rule were as contended for by the petitioner, the determination of the respondent should be sustained. The evidence clearly indicates gross receipts from the operation of the brewery in an amount much greater than the amount upon which the computation of the deficiency here under consideration was based, and we do not understand that the respondent, even under petitioner's theory, should also be required to prove his deductions for him.

We have found as a fact that the deficiency herein was due to fraud with intent to evade tax, and on that finding the penalty determined by the respondent attaches as provided by statute. Sec. 275 (b), Revenue Act of 1926.

The final issue relates to the liability of Sarah Kehoe. No proof was offered by either party and this issue was submitted on a motion

for a finding of no deficiency, the basis for the motion being the admissions contained in respondent's answer.

The notice of determination of deficiency was addressed to "Mr. and Mrs. John Kehoe." The petition herein is a joint petition and designates John Kehoe and Mrs. John Kehoe as the petitioners. It was signed and verified by each of them. In paragraph 1 thereof the petitioners describe themselves as individuals, husband and wife, residing at 143 William Street, Pittston, Pennsylvania, and state that they filed a joint return of their income for the year 1925. In paragraph 5 (a) of the petition, which contains the allegations of fact as to the return, it is alleged that on or about March 15, 1926, the petitioners, being husband and wife, duly filed a joint return of their income on form 1040, provided therefor by the Bureau of Internal Revenue. They also plead the statute of limitations and the execution of a final closing agreement. The respondent, in paragraph 1 of his answer, admits that the petitioners are individuals, residing at 143 William Street, Pittston, Pennsylvania, and that they are husband and wife, but in paragraph 5 denies that they filed a joint return of their income, and in connection with this denial, alleges that on March 15, 1926, petitioner John Kehoe filed an income tax return, whereon he answered in the affirmative the question, "Is this a joint return of husband and wife?" and alleges further that the said return was executed and signed by John Kehoe and by no other person. Further, in the answer, after admitting that none of the income involved in this proceeding was income to Sarah Kehoe, and that she was guilty of no fraud, malfeasance, or misrepresentation of a material fact in connection with the closing agreement, the respondent concludes with a prayer for a determination that the final closing agreement was induced by the fraud and deceit of John Kehoe, that the return of John Kehoe was false and fraudulent, and that the assessment of the tax against him might be made at any time. The answer asks for no determination as to Sarah Kehoe.

In their reply the petitioners admit the respondent's allegation that John Kehoe filed an income tax return for the calendar year 1925, whereon he answered in the affirmative the question, "Is this a joint return of husband and wife?" and further admit that the said return was executed by John Kehoe and no other person.

Although the nature of the return filed by John Kehoe was put in issue by the respondent's denial that it was a joint return, no proof was submitted, by either party, other than the return itself, and it disclosed nothing that was not already covered by the pleadings. Obviously the pleadings do not show that the said return was or was not the joint return of the petitioners.

On this state of the record petitioner Sarah Kehoe asks for a finding of no deficiency, while the respondent argues for a determination of the full deficiency and penalty against her, and as a basis for this argument assumes the filing of a joint return by the petitioners, John Kehoe and Sarah Kehoe, contending on this assumption that there is joint and several liability. Regardless of whether there is joint and several liability where a joint return by husband and wife is filed and a determination based on such a return is made, the respondent by his answer has precluded such an argument in this case. The assumption of a joint return is directly contrary to the allegations contained in the answer, which has not been amended and with reference to which no request to amend has been made.

It thus appears that the respondent has not proved the filing of a false or fraudulent return except in the case of a return which he alleges was executed and signed by John Kehoe alone and which he denies was a joint return. The record does not show the filing of a false or fraudulent return by or for the petitioner, Sarah Kehoe. On these facts, supplemented by the admission that none of the income herein involved was the income of Sarah Kehoe and the further fact that she was guilty of no fraud or malfeasance in connection with the closing agreement signed by her, her claim of no deficiency is sustained.

> *As to the petitioner, John Kehoe, decision will be entered for the respondent. As to the petitioner, Sarah Kehoe, decision will be entered for the petitioner.*