Harold B. Franklin, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Anna May Franklin, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 66716, 66717. Promulgated August 14, 1936.

*I. Herman Sher, Esq.,* and *Hugh Satterlee, Esq.,* for the petitioner.
*Allin H. Pierce, Esq.,* for the respondent.

930

934

McMAHON: The first question to consider is whether the transactions relating to the acquisition and disposition of the Wesco stock accomplished the purpose intended of avoiding or reducing taxes on the purchase and sale of 20,000 shares of Wesco stock.

The petitioner had an option to purchase Wesco stock. He organized two corporations. To one of them he assigned such option in exchange for its common stock and with funds paid by the petitioner for some of its preferred stock such company purchased the Wesco stock under the option. The petitioner turned over the common stock of the first corporation to the second corporation for its common stock. The first corporation dissolved and the petitioner, as preferred stockholder, received in liquidation the Wesco stock, which he thereafter disposed of.

The factual situation in *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14, wherein no fraud issue was raised, is distinguishable from the factual situation herein. In the *Chisholm* case the taxpayer, his brother, and three others owned all the stock of the Houde Engineering Corporation. On September 26, 1928, all five gave a 30-day option upon their shares to Krauss & Co. which that company on October 11 agreed to take up. The Houde shares had increased in value very much and, upon the advice of their attorney, for the purpose of avoiding income tax on the prospective sale of the Houde stock the Chisholm brothers, on October 22, formed a partnership and transferred to it their Houde stock, and notified Krauss & Co. that the partnership would perform their contract. Krauss & Co. took up the option on October 24 and the partnership received the money therefor. The firm was not then nor has it since been dissolved. The court, in holding therein that the situation presented was not analogous to the situation presented in *Gregory* v. *Helvering*, 293 U. S. 465, stated that the purpose of the Chisholm brothers was certainly "to form *an enduring firm* which should continue to hold the joint principal and to invest and reinvest it" (emphasis supplied), whereas:

\* \* \* In *Gregory* v. *Helvering, supra*, (293 U. S. 465) the incorporators adopted the usual form for creating business corporations; *but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption*, not the accompanying purpose to escape taxation; that purpose was legally neutral. *Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had*, whether to avoid taxes, or to regenerate the world. [Emphasis supplied.]

In the instant proceedings, Harbrook was incorporated on January 24, 1928. As soon as the options had been transferred by the

petitioner to Harbrook and the Wesco stock acquired by it with funds provided by the petitioner through purchase by him of its preferred stock, Harbrook on February 10, 1928, was dissolved. The activity and the life of Harbrook were limited to the purpose of acquiring the Wesco stock and transferring it to the petitioner in exchange for its preferred stock to establish a cost basis that would reduce or eliminate all taxable gain. The evidence adduced here does not disclose, as in the *Chisholm* case, an intention to form an "enduring firm" to engage in the business for which it was organized. While a valid corporation was created, its existence and purpose of existence was limited at the outset to that of acting as a contrivance, conduit, or transfer agent for Franklin for his own purpose. No real, subsisting, and enduring corporation was intended in the incorporation of Harbrook. The language of the United States Supreme Court in *Gregory* v. *Helvering, supra,* is equally applicable here:

> \* \* \* Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. *No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.* [Emphasis supplied.]

See, also, *Sydney M. Shoenberg,* 30 B. T. A. 659; affirmed in *Shoenberg* v. *Commissioner,* 77 Fed. (2d) 446; certiorari denied, 296 U. S. 586.[1]

The case of *Commissioner* v. *Eldridge,* 79 Fed. (2d) 629, affirming *A. S. Eldridge,* 30 B. T. A. 1322, is distinguishable on the facts. That case involved sales of stock to a corporation, the stock of which was all owned by taxpayers. The Circuit Court and the Board held that generally a corporation and its stockholders must be treated as separate entities and that the facts presented did not warrant disregarding such rule. Therein, the corporation was a going concern and had been engaged in business prior to the sales involved and continued in business thereafter. Herein, on the other hand, the cor-

---

[1] In *North Jersey Title Insurance Co.* v. *Commissioner,* 84 Fed. (2d) 898, the court stated:

"The principle that substance and not form should control in the application of income tax law is fundamental. Fictional corporate camouflage cannot be made the device to escape taxation."

See also *112 West 59th St. Corp.* v. *Helvering,* 68 Fed. (2d) 397. Cf. *Edward Securities Corporation,* 30 B. T. A. 918; affd., 83 Fed. (2d) 1007.

poration was organized not to transact business as a going concern, but for one purpose only, and, having performed such function, it was dissolved.

In the instant proceedings, Harbrook should, from the standpoint of Federal income taxation, be disregarded as a separate entity.

The purchase price of the 20,000 shares of Wesco stock was $656,733. While it appears that, under plan (a) of the Fox Film Corporation offer, $54 per share was to be paid for the stock, or $810,000 for 15,000 shares, the account of the petitioner with Haystone was credited with $809,400, representing a price of $53.96 for each share. It was testified that a transfer tax of $800 was paid on the 20,000 shares of Wesco stock. The difference in the price of $54 per share and $53.96 per share for 15,000 shares amounts to $600, which would indicate that the price of $53.96 reflects the purchase price less transfer tax of a total of $600. The account shows that the petitioner was charged with $200 for transfer tax on 5,000 shares of Wesco exchanged for Fox Film stock. Thus a transfer tax of $800 was paid by the petitioner. The petitioner further received $303,750 from Brookin for the 3,750 shares of Fox Film exchanged for the remaining 5,000 shares of Wesco. Hence he actually received $810,000 plus $303,750 for the 20,000 shares of Wesco, less $800 for transfer tax, or $1,112,950. The community profit is the difference between $1,112,950 and $656,733, or $456,217. From this amount there should be deducted the amount of $33,600, representing the community profit reported by petitioners upon the sale to Brookin of the 3,750 shares of Fox Film stock exchanged for 5,000 shares of Wesco stock, leaving a taxable community gain of $422,617, one-half of which is to be added to the reported taxable income of each petitioner for 1928. Since Brookin issued its 1,000 shares for 1,000 shares of the common stock of Harbrook and received $423,267 less $3,952.26, or $419,314.74, for the Harbrook stock, such amount represents the amount which the petitioner paid for the 1,000 shares of Brookin stock. Looking through form to substance, the petitioner in effect borrowed $1,080,000 from Haystone, of which $656,733 was used to purchase the 20,000 shares of Wesco stock under the option, for which he had not paid anything, and of which $423,267, less $3,952.26, or $419,314.74 was used to purchase 1,000 shares of Brookin stock. The Wesco stock was disposed of and the petitioner received $809,400 for 15,000 shares thereof and $303,550 for 5,000 shares thereof which had been exchanged for 3,750 shares of Fox Film.

The respondent at the opening of the hearing requested leave to file amended answers, stating that it was his intention, as to a possible fraud issue, to see what the evidence amounted to, and then at the close of the hearing to ask for leave to amend his amended answers to conform to proof. The presiding Member ruled that the burden

of pleading and proving fraud rested upon the respondent and that no proof of fraud would be received over objection unless fraud was pleaded by the respondent before the taking of testimony. The respondent thereupon requested leave to amend his amended answers to allege fraud, which request was granted over the objection of the petitioners based upon the ground that to do so at the opening of the hearing was an abuse of discretion on the part of the Board. Opportunity was extended therefor and the petitioners could have then requested a postponement of the hearing to prepare their defense, but counsel stated that unless counsel for respondent alleged something not covered in his opening statement he would prefer to proceed immediately with the hearing. *W. S. Gilman*, 18 B. T. A. 1277; affirmed in *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, is not applicable here. Therein the respondent, after the hearing, moved to amend his answer by adding thereto an affirmative allegation of fraud. The Board denied the motion, stating in part:

\* \* \* Under the law the respondent has the burden of proof to sustain an allegation of fraud. We think the petitioner must be put on notice that such a charge is to be made and permitted to prepare his defense thereto in advance of hearing.

The petitioners here were put on notice as to the issue of fraud at the opening of the hearing and waived their right to further time in which to prepare their defense by proceeding to hearing.

The burden of proving fraud on the part of the petitioners rests upon the respondent. Sec. 907 (a), as amended by sec. 601, Revenue Act of 1928. Such burden is discharged only by clear and convincing evidence. In *Henry S. Kerbaugh*, 29 B. T. A. 1014; affirmed in *Commissioner* v. *Kerbaugh*, 74 Fed. (2d) 749, the Board stated:

\* \* \* A charge of fraud has always been regarded as a serious matter in the law. Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence. \* \* \*
\* \* \* If not admitted it must be proved. \* \* \*

That Harbrook and Brookin were legally organized and that all the transactions set forth in our findings involved in the acquisition and disposition of the Wesco stock and the Fox Film Corporation stock were duly and actually carried out by the respective parties, is not questioned. That such transactions were carried out for the purpose of avoiding or reducing income tax does not invalidate such transactions. Transactions, legal in themselves, carried out with an intent to avoid income taxes, do not constitute a fraud upon the Government merely because of such underlying purpose. In *Helvering* v. *Gregory*, 69 Fed. (2d) 809, the court stated:

We agree with the Board and the taxpayer that a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is

actuated by a desire to avoid, or, if one choose, to evade, taxation. Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose the pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes. *U. S.* v. *Isham,* 17 Wall. 496, 506 * * *; *Bullen* v. *Wisconsin,* 240 U. S. 625, 630. * * *

To the same effect see *Gregory* v. *Helvering,* 293 U. S. 465, affirming *Helvering* v. *Gregory, supra; Chisholm* v. *Commissioner,* 79 Fed. (2d) 14; and *Joseph E. Uihlein,* 30 B. T. A. 399; affirmed in *Commissioner* v. *Brumder,* 82 Fed. (2d) 944.

There are two issues involved herein, i. e., the question whether the transactions were such as to avoid taxes, which we have answered in the negative, and the question of fraud. To negative the first does not necessarily prove the second. The fact that the respondent determined a greater tax liability than reported and his determination is sustained does not of itself establish fraud. *James Nicholson,* 32 B. T. A. 977.

As to fraud with intent to evade taxes, the record herein does not disclose that petitioners, or either of them, "attempted to obtain unallowable deductions by falsely representing the character of the same" or the "swearing to the truth of divergent statements of facts", or other facts clearly establishing fraud, as in *M. Rea Gano,* 19 B. T. A. 518, 533, cited by respondent. Nor does the record disclose any concealment of income by fictitious means as in *Garden City Feeder Co.,* 27 B. T. A. 1132, cited by respondent, or in *John Kehoe,* 34 B. T. A. 59. *Fred Ascher,* 2 B. T. A. 1257; *I. J. Adelson,* 7 B. T. A. 110; *Bert M. Wuliger,* 16 B. T. A. 1220; 19 B. T. A. 462; and *L. Schepp Co.,* 25 B. T. A. 419, also cited by the respondent, are distinguishable on the facts from the instant proceedings.

Two field examinations and investigations were made by different revenue agents, one in Los Angeles, California, in July 1931, and another in New York later in 1931. In making his recomputation and in his notices of deficiency, dated April 27, 1932, the respondent did not take the position that the transactions herein were fraudulent with intent to evade taxes. No affirmative allegations of fraud were made in the original answers filed nor in the first amended answers presented at the hearing, counsel for respondent stating that he intended to withhold alleging fraud until the close of the hearing, and his so doing depended upon the evidence adduced at the hearing. In his computation of the deficiency the respondent allowed the cost basis of $1,080,000 as claimed by the petitioners, and in his original answer admitted that the 10,800 shares of preferred stock of Harbrook were acquired at a cost of $1,080,000. At the time respondent pleaded fraud affirmatively, at the hearing, he had no newly discovered evidence upon which to base his plea of

fraud except the voluntary admission of the petitioner that it had been discovered a few days prior to the hearing that the item of $42,500 had been inadvertently omitted from the gross community income for 1928. Although he attempted to show, upon cross-examination of petitioners' witness, that the petitioners refused to permit the revenue agents to examine petitioners' records, which was emphatically denied by such witness, he failed to call the revenue agent to rebut the testimony of petitioners' witness in this respect. All the papers, statements and other data relating to the transactions here involved or used in the preparation of the returns of petitioners were submitted to the revenue agents. It would appear that up to the time of the hearing respondent had found no evidence of fraud and that at that time he was uncertain what position to take and intended to permit the evidence adduced at the hearing to shape his course. The attitude of the respondent throughout indicates that the results of his examinations and investigations up to the time of the hearing negatived fraud or, at least, were insufficient to justify the determination of a fraud penalty.

As to the item of $42,500, the secretary of the petitioner testified in substance that although he had seen the item on the Hayden, Stone & Co. statement, he had not included it in income because he thought it represented a capital transaction; that about two days before the hearing of these proceedings, in examining correspondence of the petitioner for possible use thereat, he came across a telegram sent by the Gore Brothers referring to this item; that he called it to the attention of the petitioner, who asked him whether he had included it in his reported income; that upon his reply in the negative, the petitioner stated that he should have done so; and that he thereafter mentioned the matter to petitioners' counsel on the day before the hearing while traveling to Washington.

Harold B. Franklin testified that he recalled receiving the amount of $42,500 from Gore Brothers in March 1928; that he did not receive it personally, but that it was sent to Hayden, Stone & Co. and deposited to his credit while he was in Portland, Oregon; that the amount represented "an expression of appreciation for a job well done" in developing West Coast Theatres, Inc., of which Gore Brothers owned considerable stock, from a losing to a profitable enterprise.

There is no showing of any attempt to conceal the item of $42,500, or any other item or transaction involved herein, so as to prevent the discovery thereof. As stated in *Drawoh, Inc.*, 28 B. T. A. 666;

* * * While it is of course lawful for taxpayers to use means and methods which are legal and not tainted with fraud to avoid taxes, *Brillen* v. *State of Wisconsin*, 240 U. S. 625, *Isham* v. *United States*, 17 Wall, 496, it is

never lawful for taxpayers to use methods of concealment and deception to evade taxes. It is in the use of the latter methods that taxpayers run afoul of the fraud penalties. * * *

The evidence presented as to the transactions relating to the Wesco stock does not justify a finding of fraud and the imposition of a fraud penalty, nor does the evidence presented justify a finding that the omission of the income item of $42,500 was due to fraud with intent to evade income tax. *Ned Wayburn*, 32 B. T. A. 813; *Oscar G. Joseph* 32 B. T. A. 1192. On the contrary the evidence, in our opinion, shows that the transactions here involved and the failure to report the income item were not due to fraud with intent on the part of the petitioners, or either of them, to evade income taxes, and we have so found.

Consideration of the testimony as it was adduced at the hearing, together with a consideration of the entire record thereafter, leads to the conclusion that the conduct of the petitioners is reconcilable with good faith on their part and establishes that they are not guilty of fraud as charged by the respondent in his amended answer. There is no basis in the record adequate to sustain a finding or holding that they, or either of them, are guilty of fraud. On the other hand the record does sustain the finding and holding, which we have made, that neither is guilty of fraud.

The petitioner, Harold B. Franklin, who was present throughout the hearing, was not called as a witness in his own behalf, but he was called as a witness by the respondent and examined touching various aspects of the affirmative allegations of fraud of the respondent. After direct examination he was cross-examined by his counsel, and his counsel apparently considered that there was no occasion for further examination of the petitioner as a witness. Petitioner's attorney at law, who at the times in question handled all of the transactions pertaining to the Wesco stock for him, his confidential secretary and accountant employed by him in about February 1929, who made the 1928 separate income tax returns for him and his wife, and others were called as witnesses by the petitioner, and other witnesses were called by the respondent. In the testimony of all of these witnesses all of the transactions in question and all of the details and corporate minutes and records and book entries touching the issues presented here were gone into extensively. This petitioner at that time was president and manager of West Coast, which operated approximately five hundred theatres, and he filed returns of about one hundred corporations. He traveled extensively and obviously, of necessity, he was obliged to leave most details, and some things that were more than details, to others, and more particularly to his attorneys and his secretary, and even to

those acting for the corporations. There is no justification in the record for an inference that this petitioner or his wife attempted to withhold from the Board any evidence necessary to a proper disposition by it of the issues raised. In any event, in the light of the whole record, the failure of this petitioner to testify further is not an adequate basis for reaching results, other than those reached herein.

The respondent alleges and claims, in the alternative, that the 5 percent negligence penalty should be imposed for failure to report the item of $42,500 as community income. The petitioner testified that he did not audit or check his return prepared by his secretary to see whether any particular transactions were included; that he did not have the item of $42,500 in mind at the time, although he had knowledge of receiving it; that he did not have time to check over his return; that it was impossible for him with his various duties to have done so; that he filed returns of perhaps one hundred corporations; that he traveled a lot; that he had to rely on some one in this respect; and that he had confidence in his secretary and depended upon him entirely to prepare his return. As stated in *Irving Fisher*, 30 B. T. A. 433, 443, "Petitioner can not escape liability for a correct return by committing its preparation entirely to his secretary." See also cases cited therein, and *Milton A. Mackay*, 11 B. T. A. 569. Section 51(a) of the Revenue Act of 1928 provided that he "*shall* make under oath a return stating *specifically* the items of his gross income." (Emphasis supplied.) We conclude, therefore, and we have so found, that the omission of this item of $42,500 from the reported community income was due to the negligence of Harold B. Franklin and the negligence penalty of 5 percent should therefore be imposed as to him upon the whole of his deficiency. Sec. 293 (a), Revenue Act of 1928.

As to Anna May Franklin, the secretary of her husband testified that she did not provide him with any books or statements for the preparation of her return; that the return was submitted to her to sign; and that he did not know how complete an examination of it she made. Franklin testified that he discussed casually with Mrs. Franklin the transaction relating to the Wesco stock; that she had some knowledge of this transaction, but not as to details. The returns for 1928 of the petitioners disclose that Anna May Franklin had no other income than that derived from the earnings of her husband, dividends from securities bought after July 29, 1927, and the profits resulting from her husband's dealings in securities, in which she acquired a community interest because of their residence in California and their relationship as husband and wife, the basic relationship as between them. From the evidence

it appears that the transactions herein were all carried out by the direction of her husband, and that he managed and controlled the community property as his own. In 1928, so far as we know, Anna May Franklin resided in California. Harold B. Franklin traveled a good part of the time and transacted a large part of his business in New York. The community interest of Anna May Franklin in the earnings and property of her husband and the fact that her return was substantially a duplicate of her husband's return is not sufficient proof of fraud or negligence on her part. The evidence adduced as to her is wholly insufficient to prove fraud with intent to evade taxes or negligence on her part, the burden of proving which rests upon the respondent, *Henry S. Kerbaugh, supra,* and *American Ideal Cleaning Co.,* 30 B. T. A. 529. There is no evidence disclosing that she had knowledge of the receipt by her husband of the $42,500; that she could have with due diligence discovered the receipt of such income, or that she did not use due diligence and care in the preparation of her return. Although two revenue agents examined her husband's records upon two different occasions, they failed to discover this item and no claim was made for the tax thereon until her husband voluntarily, at the hearing, admitted receiving the same.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

BLACK, MURDOCK, and MELLOTT dissent because they do not think the separate entity and the acts of the Harbrook corporation can be ignored.

---

TYSON, dissenting: The opinion as adopted by the Board finds that there is negligence on the part of Harold B. Franklin, the husband of Anna May Franklin, both being petitioners in these consolidated proceedings, in omitting from his return his share in the item of $42,500 received as community income, and imposes upon him as a result the statutory penalty of 5 percent, but absolves Anna May Franklin from the imposition of a like penalty for an identical omission. I disagree with the opinion in so far as it fails to impose a negligence penalty on Anna May Franklin.

In the preparation of the returns in which the omissions occurred both petitioners acted through an agent, who knew of the item, but did not include it in income because he thought it a capital transaction, and each petitioner filed his or her respective return as so prepared. At the time of the preparation of these returns the only difference between the relative positions of the husband and wife

with regard to this item was that the husband had actual knowledge of having received it, while it does not appear from the opinion that the wife did have such actual knowledge. However, in the opinion it is said:

From the evidence it appears that the transactions herein were all carried out by the direction of her husband and that he managed and controlled the community property as his own.

It thus appears that in managing and controlling the community property the husband was acting as the agent of the wife, and his knowledge of the receipt of this $42,500 as well as any negligence on his part in thereafter failing to see that this item was included in her return is imputable to her.

Mrs. Franklin's return having been prepared by her husband's secretary as her agent for that purpose, the negligence of such agent, if any, in its preparation is also imputable to her. So, regardless of whether the negligence in ommiting the item from her return was attributable to either her husband or his secretary, or to the joint negligence of both, such negligence was hers under the familiar rule that the negligence of an agent when acting within the scope of his authority is the negligence of the principal.

I dissent from the opinion in so far as it failed to assess the statutory penalty of 5 percent against Anna May Franklin.