George Herberger v. Commissioner. Mabel Herberger v. Commissioner.
Herberger v. Commissioner
Docket Nos. 22117 and 22118.
United States Tax Court
1950 Tax Ct. Memo LEXIS 166; 9 T.C.M. (CCH) 546; T.C.M. (RIA) 50165; June 28, 1950
*166 Petitioner processed and sold pickles. His sales were for cash but he took an inventory at the end of the year and on his returns used inventories in computing cost of goods sold. He sold his entire stock in 1944 for a fixed price, of which part was paid in 1944 and part in 1945. Held, respondent did not err in computing income on the accrual basis and in accruing as 1944 income the unpaid part of the purchase price. In 1943 and 1944 petitioner sold pickles invoicing them at OPA ceiling prices and collecting an additional amount in cash which he concealed and did not report for entry on his books. His tax returns were prepared from the books by an accountant. Petitioner knew the returns did not show the over-ceiling collections. Held, petitioner's returns were fraudulent with intent to evade tax and the 50 per cent penalty was properly asserted. Petitioner failed to have recorded on his books the receipts of certain sales in 1942 amounting to $498.19, part of which was paid out for expenses of his business. Total sales exceeded $20,000. Held, respondent has not proved that petitioner's 1942 return was fraudulent with intent to evade tax. Petitioner Mabel Herberger made the *167 book entries of her husband's business, posting figures he furnished her. Her tax returns were prepared from the books and included her community share of the business income. No evidence is adduced to show she participated in the business or knew of the omission of income. Held, her returns were not fraudulent with intent to evade tax. George T. Altman, Esq., 215 W. 7th St., Los Angeles 14, Calif., and Harry Graham Balter, Esq., for the petitioners. *168 Earl C. Crouter, Esq., and Byron M. Coon, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Respondent determined deficiencies in income and victory tax for the calendar year 1942 and in income tax for the calendar years 1941 and 1943 against petitioners, and 50 per cent penalties, as follows: George Herberger
Mabel Herberger
Tax
Penalty
Tax
Penalty
1942
$ 73.66
$ 36.83
$ 75.21
$ 37.61
1943
327.51
163.76
328.64
164.32
1944
2,981.58
1,490.79
3,066.58
1,533.29
The issues are whether the petitioners had unreported income in the taxable years from sales of merchandise, whether they realized income in 1944 from a certain sale made in that year to the extent of payments which were to be received, and which were received, in 1945, whether any part of the deficiencies is due to fraud with intent to evade tax and whether any of the deficiencies is barred by the statute of limitations. Findings of Fact The petitioners are husband and wife. They resided in California during the taxable years. The income here involved was all community income. The petitioners filed timely separate *169 income tax returns for the calendar years 1942, 1943 and 1944 with the collector of internal revenue at Los Angeles, California, on a community property basis. On November 14, 1946 they filed amended returns for the years 1943 and 1944 reporting increased amounts as income and paid additional taxes. The original returns for 1942 and 1943 and the amended returns for 1943 stated that they were prepared on a cash basis. Petitioner George Herberger was engaged in the taxable years in the business of processing and selling pickles. He processed the pickles at a plant at 2420 North Alameda, Compton, California. The land on which the plant was located was in the joint names of the petitioners. George Herberger's father had been in the pickle business and George had worked for his father outside school hours. George had attended a business school for several months. He was engaged in the business of processing pickles for several years prior to 1942. He carried on the processing with no more than one or two temporary helpers and had a trucker attend to deliveries and make collection on delivery. He sold for cash and not on credit. If an invoice was not paid on delivery he kept it in his *170 pocket for a few days until he could collect. Herberger bought his year's supply of cucumbers in July. They were placed in vats and salt was added. The curing in salt required 90 to 120 days. Thereafter quantities of the pickles were placed in smaller tanks and processed for about three days. Herberger could process a total of 42 barrels a week. Herberger sold his pickles in barrels, or in five-gallon jars. In 1942 and 1943 Herberger made certain sales which were not recorded on the books and other sales were made in which the amounts deposited in the bank and posted to the books as sales were less than the net amount of the invoice. For example, he made sales to Frank Raby in 1942 amounting to $219 and in 1943 amounting to $81.50 which were not entered on his books. Also, he sold pickles to Scott's Food Products in 1942 and 1943, but amounts posted in his books as representing deposits of money collected from such sales were less than the amounts of the invoices, by $162.19 in 1942 and $284.50 in 1943. In some of these cases the difference was used to pay for business expenses which he failed to have recorded and in other cases for personal expenses. Some of his business expenses *171 were paid by check and posted to the books from the checking account. In the fall of 1943 the Office of Price Administration established ceiling prices on pickles of approximately $15 a barrel. Herberger invoiced his pickles to customers at the established ceiling price but in most instances collected approximately $3.00 per barrel over the ceiling price in cash. The over-ceiling amounts were not recorded on the books nor were they included in the income reported in the petitioner's original returns. Herberger made sales in 1942 in the amount of $171.40 in which he made collection in 1943 and returned the amount in 1943 income. He made sales in 1943 in the amount of $946.86 in which he made collection in 1944 and returned the amount in 1944 income. He had income from sales in 1942 in the amount of $498.19 and from sales in 1943 in the amount of $2,653.94, which income was not entered on his books or reported in the petitioners' original returns. On October 31, 1944, Henry Harmel, one of Herberger's customers, offered to purchase Herberger's entire available stock, then in vats at the plant. An agreement was reached for the sale at an invoice price of $15 per barrel plus a side *172 payment of $3 per barrel. Harmel paid $10,000 in cash on that date and Herberger gave him an invoice reading: "Sold to Harmel Del Supply * * * 1626 Bbls, field run salt stock at $15.00 per Bbl. Including use of cooperage also use of plant at 2420 N. Alameda, Compton, but must pay light, water, gas and telephone. Payment on acct. $10,000.00." Harmel paid Herberger $10,000 on October 31, 1944 and paid the balance of the invoice price $14,390 in 1945. Harmel also bought Herberger's rights to rationed sugar, paying $200 for them. Herberger turned over to Harmel the keys to the processing plant and Harmel and his employees processed the pickles there without Herberger's assistance or presence. The understanding was that Harmel should have the use of the plant to process the 1,626 barrels but should be out by June 1945 as Herberger expected to buy a new crop in July. Harmel finished the processing in April 1945. In 1944 Herberger collected the over-ceiling payment of $4,878 in one cash payment and buried the cash in a pipe in his back yeard. Herberger paid cash in the amount of $150 in 1942, $150 in 1943, and $100 in 1944 for business expenses which were not recorded on the books and *173 not deducted in computing net income for tax purposes. These amounts are allowable deductions, in addition to other deductions, in determining the petitioners' income for such years. No part of the deficiency for 1942 in the case of George Herberger was due to fraud with intent to evade tax. Parts of the deficiencies for 1943 and 1944 in the case of George Herberger were due to fraud with intent to evade tax. Petitioner Mabel Herberger was employed by A. S. Johnston Drilling Corporation, Long Beach, California, during 1942 and 1943, and until August in 1944. She worked under the direction of Ernest G. Kimme, Secretary-treasurer. She kept the books of her husband's business, making entries from memoranda he handed her. After the end of each year she took the books to Kimme who assisted her in closing them and Kimme prepared income tax returns for both petitioners from Mabel Herberger's trial balance. In posting the books Mabel Herberger entered sales from the deposit slips furnished her by George Herberger and not from the invoices. No record was made in the books of accounts receivable or accounts payable. No part of any deficiency for 1942, 1943 and 1944 in the case of Mabel *174 Herberger was due to fraud with intent to evade tax. The following figures are shown in the original and amended returns: Original Returns
1942
1943
1944
Total receipts
$20,340,47
$25,576.27
$28,472.20
Inventory, 1st of yr.
4,054.21
5,311.93
5,364.04
Merchandise bought
10,683.67
13,628.05
16,801.94
Inventory, end of yr.
5,311.93
5,364.04
7,698.85
Net cost of goods sold
10,536.18
14,878.02
15,240.21
Depreciation claimed
732.84
744.27
732.29
Gross profit
9,804.29
10,698.25
13,231.99
Net profit
6,384.99
7,633.04
10,600.57
Income (each taxpayer)
4,304.03
5,035.26
6,150.21
Tax - George H.
659.88
1,119.91
1,163.56
Tax - Mabel H.
736.88
1,234.67
1,293.57
Amended Returns
Total receipts
28,664.13
34,540.34
Net profit
10,720.90
16,668.71
Income (each taxpayer)
6,579.24
9,184.28
Tax - George H.
1,566.11
2,110.81
Tax - Mabel H.
1,682.42
2,268.19
Opinion The principal adjustment in controversy is respondent's transfer to 1944 income of $14,390, the balance of the stated purchase price of the sale to Harmel on October 31, 1944. The respondent considers this as 1944 income; the petitioners returned *175 it as 1945 income. The petitioners contend that Herberger was on a cash basis of accounting, and that this amount, being received in 1945, was correctly returned as income for that year. The respondent contends that Herberger was necessarily on the accrual basis of accounting and that the unpaid part of the purchase price should have been accrued on the books in 1944 as an account receivable. A taxpayer's books are to be kept on a basis which will correctly reflect income. (Section 41, Internal Revenue Code.) The applicable regulations provide that in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method (Section 29.41-2, Regulations 111). This regulation has been in effect for many years and consequently has the force and effect of law. Herberger took an inventory of his pickles at the end of each year and the figures were used in the tax returns in computing the cost of goods sold. Since inventories were taken and were used in computing income, the accrual method of accounting should have been used. Generally Herberger sold for cash and consequently *176 did not establish on his books open accounts in the names of his customers or a general account receivable for the few items carried on credit for a day or two. There was no very material difference in the result, tax-wise, as to these smaller amounts. The sale to Harmel was of greater magnitude and Herberger's accounting as to that sale on the cash basis did not correctly reflect the income. The respondent did not err in recomputing income on the accrual method and treating the unpaid balance owed by Harmel as income in 1944 in the form of an account receivable. Petitioners argue that because no credit was given and Harmel was to pay for the pickles before removing them, there was no debt to accrue in 1944. This, we think, misinterprets the terms of the sale. Harberger, according to the written memorandum, sold the entire quantity with a payment on account. He turned over to Harmel the keys to the plant. Thus he did all that was necessary to put the buyer into possession. The understanding that payments would be made to cover the quantity removed at any time is consistent with the theory that Herberger retained a vendor's lien on the stock to secure payment of the balance. The same *177 is true as to the inventory he took at the end of the year in which he counted as his pickles the proportion of the whole not covered by the initial payment. We think the intention of both parties at the time of the sale was that title to the entire stock should pass to Harmel immediately. Petitioners argue, also, that the contract was illegal and unenforceable by Herberger because of the over-ceiling price, and consequently the balance due him was not accruable as he had no fixed right to collect it. There was no dispute in 1944, or at any time, as to Harmel's liability. Herberger had no fear of nonpayment, he knew Harmel could and would pay the balance. The illegality of the contract was a defense which Harmel might or might not interpose if Herberger sued him. It did not entitle Herberger to postpone accrual of the admitted debt. We have concluded that Herberger's accounting should have been on the accrual basis. Respondent transferred sales amounting to $171.40 from 1943 to 1942 and sales of $946.86 from 1944 to 1943 for items which should have been accrued as income in the earlier year when the sales were made instead of in the later year when payment was received. Petitioners *178 have not shown error in these adjustments and respondent's action is sustained. Respondent has shown, and Herberger admits, that Herberger did not include all his sales in gross sales in reporting the income of his business for 1942 and 1943. Some sales were recorded on his books in an amount less than the full amount of the sale and others were omitted entirely. Herberger said that when he collected cash from sales he often expended some of the cash and deposited only what was left as representing proceeds of sales. Some of these cash expenditures were for business purposes, such as for barrels, brooms, lime, cans for dipping brine out of the tanks, brushes, paint, lumber, and nails. Other expenditures were for personal expenses, such as medical and sanitarium bills. He made no record of many of these cash expenditures and he said that those made for business purposes were not claimed as deductions on the original tax returns which were prepared from the books. Herberger estimated that his cash expenditures for business purposes not recorded on the books amounted to some $60 to $70 per month. In the fall of 1943 the Office of Price Administration fixed a ceiling price on pickles *179 amounting to about $14.70 or $15.00 a barrel. Herberger made sales to customers, invoicing the pickles at the ceiling price and collecting in cash an added charge of about $3.00 per barrel. He exacted the extra amount from most of his customers. He did not deposit these over-ceiling collections in his bank account and made no record of the amounts so received or of their expenditure. Herberger did not keep the books of his business and apparently did not understand the elementary requirements of accounting for income and expenses. He was unable to explain the book entries. He did state that his wife, who kept the books, took the sales figures from the duplicate bank deposit slips which he gave to her and not from the invoices. Herberger admits some amounts were omitted from income reported and as he has not shown that the respondent erred in adding $498.19 to the 1942 income and $2,653.94 to 1943 income, we sustain those adjustments. However, the respondent made no allowance for unrecorded business expenses paid by Herberger from these cash receipts. Under the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, we must determine from the evidence a reasonable allowance *180 for such expenditures. We have found that $150 was paid in 1942, $150 in 1943, and $100 in 1944 for business expenses in addition to the expenses recorded on the books and are allowable deductions in determining the net income of the business for those years. There is disagreement as to whether the over-ceiling payment arising out of the Harmel deal was received by Herberger in 1944 or in 1945. Respondent treated it as income in 1944 and the petitioners have not sustained the burden of proving the contrary. Harmel said he paid the extra money the beginning of 1945. Herberger said he collected it in 1945. In 1946 he made a sworn statement that he had no recollection of when he received it. We sustain the respondent's allocation of this item to 1944 income. Respondent determined that each petitioner's omission to report income for each of the taxable years was due to fraud with intent to evade tax, and asserted penalties of 50 per cent of the amounts of the deficiencies accordingly. The burden is upon the respondent to prove fraud. With respect to petitioner Mabel Herberger, the record does not show that she had knowledge of the receipt of income beyond that which was recorded on *181 the books. She kept the books and posted the items of income and expense given her by her husband or shown by the checks drawn to pay expenses. Her returns were prepared from the books. Proof of fraud must be positive. We may not infer that she must have known of her husband's omission to report income and accepted the tax benefit with knowledge. Her community interest in the undisclosed earnings of the business does not of itself provide a basis for assertion of the fraud penalty against her. Harold B. Franklin, 34 B.T.A. 927, 942. There being no evidence that she participated in the business dealings or had knowledge that the figures her husband gave her to post in the books were not correct and there being no showing of intent on her part to evade tax, we hold that the respondent has not proved fraud as to Mabel Herberger. The deficiency determined against George Herberger for 1942 is $73.66. This arises from two adjustments, one of which was occasioned by an honest assumption by the taxpayer that he was on a cash basis of accounting so far as his sales and collections were concerned. The other adjustment, representing omitted sales of $498.19 out of total sales *182 of over $20,000, less than 2 1/2 per cent, was apparently due principally to poor accounting methods in handling cash transactions. This petitioner was a diabetic. He took insulin every day, and at times the state of his health affected his memory. He was ignorant of accounting methods. The evidence fails to show affirmatively that the insignificant understatement of income for 1942 was deliberate. The record does not warrant the conclusion that it was due to fraud with intent to evade tax. The penalty against George Herberger for 1942 is not sustained. We think the record sufficiently shows that George Herberger's original returns for 1943 and 1944 were fraudulent with intent to evade tax. In these years he was making sales in which he collected amounts in excess of the ceiling price fixed by the Office of Price Administration. This was a deliberate flouting of the price control law and regulations and he was fearful that the Administrator's agents would discover the overcharges. He concealed some of this money and deliberately avoided recording the receipt of any of it. He says that fear of the consequences of the overcharges, not intent to evade income tax, was the impelling reason *183 for his failure to report his true income in his original returns. He did know that the over-ceiling collections were not recorded on the books, that the returns were prepared from the books, that the returns omitted this income, that in this respect the returns were false and that the tax computed on his returns was less than his correct tax liability. The deliberate act with knowledge of its tax consequences constitutes fraud with intent to evade tax even though another motive may have coexisted. The deficiencies here involved are not barred by section 275 of the Internal Revenue Code, providing a period of limitation upon assessment and collection of income tax. Mabel Herberger executed waivers of the period of limitation as to the tax for 1943 and 1944, and since we have found George Herberger's original returns for 1943 and 1944 to be fraudulent with intent to evade tax, assessment as to those years may be made, as provided in section 276, at any time. Since assessment of the 1943 tax is not barred, there is no bar to the determination of the deficiencies for 1942, as they are involved solely in the computation of the 1943 tax. Lawrence W. Carpenter, 10 T.C. 64. *184 Decision will be entered under Rule 50.