Murray W. Harmon v. Commissioner.
Harmon v. Commissioner
Docket No. 36811.
United States Tax Court
T.C. Memo 1955-204; 1955 Tax Ct. Memo LEXIS 132; 14 T.C.M. (CCH) 815; T.C.M. (RIA) 55204; July 22, 1955
*132 1. Respondent determined a deficiency in petitioner's 1943 income tax and also asserted a fraud penalty. The 1943 deficiency included, pursuant to section 6(a) of the Current Tax Payment Act of 1943, 25 per cent of a deficiency determined in petitioner's 1942 tax. Petitioner's 1943 return was filed more than three years prior to the mailing of the deficiency notice. Petitioner did not assign error to the 1943 and 1942 deficiency determinations themselves but based his case entirely on the bar of the 3-year statute of limitations. Held, respondent has proved that certain items of income with which petitioner was taxable in 1943 were omitted from his return. However, respondent has not proved by clear and convincing evidence that such omission was due to fraud with intent to evade tax. Held, further, that the 3-year statute of limitations provided by section 275(a), Internal Revenue Code of 1939, bars assessment of the deficiencies determined by respondent against petitioner for 1943. 2. Held, that an alleged partnership between petitioner, his stepson and brother-in-law, organized to operate two liquor stores and a drive-in restaurant, was not a bona fide partnership and was not *133 recognizable for tax purposes and that the net profit therefrom in 1944 and 1945 was taxable entirely to petitioner. Respondent, however, failed to prove (except for minor amounts in 1945) that additional deficiencies asserted in his amended answer, based upon understatements of reported sales and purchases of one of the liquor stores, were due from petitioner in 1944 and 1945. 3. Even though petitioner either gave or loaned his stepson the money invested by the latter in a joint venture to run a hotel, petitioner was neither connected with, nor exercised control over, the venture or the income therefrom. Such income was received by the stepson and dealt with as wished by him. Held, petitioner's stepson was the actual participant in the joint venture and respondent, therefore, erred in determining that the income therefrom was taxable to petitioner in 1945. 4. Held, petitioner was engaged in the trade or business of farming in 1945 and, since the expenses incurred therein were deductible business expenses, respondent erred in disallowing the farm loss claimed by petitioner in his 1945 return. 5. Included in petitioner's 1944 return (filed in 1945) was a statement indicating *134 that it was incomplete. Any omissions of income by petitioner from his returns for 1944 and 1945 were not due to fraud with intent to evade tax. Held, no part of the deficiencies for 1944 or 1945 was due to fraud. John A. Darsey, Esq., 1113 Hurt Building, Atlanta, Ga., for the petitioner. Newman A. Townsend, Jr., Esq., and Paul J. Weiss, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner, in his deficiency notice, determined that petitioner was liable for the following deficiencies and additions to tax for fraud: 50% Fraud
Year
Tax
Deficiency
Penalty
1943
Income and Victory
$136,936.04
$68,468.02
1944
Income
13,395.20
6,697.60
1945
Income
9,072.95
4,536.48
The adjustments occasioning the deficiencies and penalties are explained in the statement accompanying the deficiency notice as follows: 1942 [Twenty-five per cent of the deficiency determined for 1942, on the basis of the below-stated adjustments to income, was included in the computation of the deficiency determined for 1943 in accordance with the so-called "forgiveness feature" of section 6(a) of the Current Tax Payment Act of 1943.] Unallowable deductions and additional
income:
(a) Income from rents
$ 312.28
(b) Income from business increased
[Resulting from attribution to
petitioner of all, rather than
just a partnership share, of
income from Murray's Liquor
Store & Drive-In]
1,570.00
1943
(a) Income from rents
$ 786.10
(b) Income from business increased
[(1) $38,536.03 increase result-
ing from attribution to peti-
tioner of all, rather than just
a partnership share, of in-
come from Murray's Liquor
Store & Drive-In. (2) $5,525.10
understatement of income
from Gate City Liquor Dis-
tributors (proprietorship) for
period 3/1/43-12/31/43. (3)
Omission, for period 7/1/43-
12/31/43, of $5,832.90 income
from Cove Liquor Store and
$2,368.57 income from Lounge
Restaurant.]
52,262.60
(c) Income from partnerships in-
creased [Omission of $11,479.42
income from Murray Harmon
and J. C. Garner partnership
(operating Cove Liquor Store,
Lounge Restaurant, and 844
Memorial Drive Liquor Store)
for period 1/1/43-6/30/43, and
of $20,531.88 income from Gate
City Liquor Distributors part-
nership for period 8/1/42-
2/28/43.]
32,011.30
(d) Other income [from "side pay-
ments"]
16,250.00
(e) Loss from theft [by former
bookkeeper] disallowed [for
lack of substantiation]
50,000.00
1944
(a) Income from rents
$ 5,499.66
(b) Income from business increased
[Resulting from attribution to
petitioner of all, rather than
just a partnership share, of
income from the businesses
(Murray's Drive-In, S. Pryor
St. Liquor Store, and 844 Me-
morial Drive Liquor Store)
operated under the partner-
ship name of Harmons &
Burns.]
14,401.75
(c) Net capital gain [from sale of
business properties]
3,889.04
1945
(a) Income from rents increased
$ 4,987.78
(b) Income from business increased
[Resulting from attribution to
petitioner of all, rather than
just a partnership share, of
income from the businesses
(Murray's Drive-In and S.
Pryor St. Liquor Store) op-
erated under the partnership
name of Harmons & Burns.]
1,627.72
(c) Farm loss disallowed [as con-
stituting a personal, rather
than a business, expense]
3,263.50
(d) Income from partnership [Re-
sulting from attribution to
petitioner, rather than his
stepson, of joint venturer's
share of income from the Cox-
Carlton Hotel.]
9,351.11
*136 As regards the deficiency determination for 1943 (which includes 25 per cent of the deficiency determined for 1942) petitioner raises the defense of the statute of limitations and contests the fraud determination relied on by respondent to avoid said statute. Petitioner does not assign error to the deficiency determinations themselves for 1942 and 1943. Petitioner, by appropriate assignments of error, does contest both the deficiency and fraud determinations for 1944 and 1945. In an amendment to his Answer the Commissioner asserted that petitioner was liable for the following additional income tax deficiencies and fraud penalties: 50% Fraud
Year
Deficiency
Penalty
1944
$22,487.66
$11,243.83
1945
1,297.93
648.96 By way of explanation the Commissioner alleged in that amendment that petitioner fraudulently omitted from his 1944 return rental income in the amount of $5,778.78 (rather than $5,449.66 as stated in the deficiency notice), and further alleged that: "In his 1944 and 1945 income tax returns petitioner, with willful intent to evade taxes, fraudulently understated his income from the business, [operated under the partnership name] Harmons *137 and Burns, by the amounts of $44,242.87 and $3,703.55, respectively, as follows: "1944. Understatement per Stat-
utory Notice of Deficiency
$14,401.75
Additional: Increase in sales
(S. Pryor St. Liquor
Store)
$55,214.95
Increase in purchases
(S. Pryor St. Liquor
Store)
25,373.83
29,841.12
$44,242.87
"1945. Understatement per Stat-
utory Notice of Deficiency
$ 1,627.72
Additional: Increase in sales
(S. Pryor St. Liquor
Store)
$12,100.00
Increase in purchases
(S. Pryor St. Liquor
Store)
10,024.17
2,075.83
$ 3,703.55"
Petitioner contests those additional deficiencies and fraud penalties. Findings of Fact Some of the facts were stipulated and the stipulation thereof is incorporated herein by reference. Murray W. Harmon, petitioner, resided in Atlanta, Georgia, during the years in issue and filed individual income tax returns for those years with the Collector of Internal Revenue for the District of Georgia. 1943 Petitioner's income tax return for 1943 was filed on July 31, 1944. The deficiency notice in these proceedings was mailed to him on June 21, 1951. During 1943, petitioner received from his rental collection *138 agent 11 checks, totaling $1,904.10, which represented net rents from properties owned by petitioner. Petitioner reported no rental income and respondent determined that petitioner's net unreported profit from his rental property for 1943 was $786.10. In 1938, petitioner and his stepson, Luther P. Harmon, hereinafter sometimes referred to as Luther, executed a written partnership agreement to operate a liquor store and drive-in restaurant at 1010-1012 S. Pryor Street, Atlanta, Georgia. Those properties were called Murray's Liquor Store and Drive-In. Luther, who was then 19 years old and had little business experience, was to devote all his time to those businesses. He contributed no capital. The alleged partnership was dissolved December 31, 1943. Respondent determined that the partnership was invalid, that petitioner was the actual owner of the entire business, and, therefore, that petitioner's income therefrom for 1943 was understated by $38,536.03 of the business profits which Luther had reported as partnership income. On August 12, 1942, petitioner, W. R. Hester, and M. L. Hayes executed a partnership agreement to operate a wholesale liquor business under the name of Gate City *139 Liquor Distributors, sometimes hereinafter referred to as Gate City. The interests of petitioner and Hester were 47 1/2 per cent each and Hayes' interest was 5 per cent. For reasons best known to the partners the license to operate the business was issued in the name of a nominee, Melvin Pazol, a salaried employee. The business operated as a partnership, with petitioner as its general manager in control of all its operations and Hayes doing most of the day to day work, from August 18, 1942 until February 28, 1943. On that latter date petitioner bought out the interests of Hester and Hayes and continued to run the business as a sole proprietorship from March 1 to December 31, 1943. The business was then discontinued because the Georgia state liquor authorities would not renew its license. Gate City's principal business was to act as a clearing house for sale of liquor from distributors to retailers who wished to dispose of it in so-called "dry" counties of the state. Gate City levied a service charge of $1.00 per case for that clearing house service. In addition, it sold substantial amounts of liquor at prices greatly in excess of O.P.A. ceilings. Partnership information returns, *140 covering the period August 18, 1942-February 28, 1943, were filed for Gate City both with the United States Collector of Internal Revenue for the District of Georgia and the State of Georgia's department of revenue. The latter return was signed by petitioner. Both returns reported partnership net income as $37,138.77 for that fiscal period and petitioner's and Hester's 47 1/2 per cent shares thereof as $17,640.92 each. Gate City's journal and petitioner's and Hester's capital accounts in Gate City's ledger likewise contained entries crediting them each with $17,640.92 of the partnership's earnings. Hester was informed of his partnership earnings by Hayes (who kept the partnership books) and reported such on his individual return filed for 1943. Petitioner, however, failed to report in his 1943 return the aforementioned $17,640.92 or any income whatsoever from the Gate City partnership. Respondent determined that petitioner's unreported income from that partnership was $20,531.88 for 1943. Respondent's determination of $20,531.88 seems to be unjustified. Petitioner's share of income from this partnership was $17,640.92. Petitioner did report, in his 1943 return, net income of $94,414.80 *141 from his sole proprietorship operation of Gate City for the period March 1-December 31, 1943. Respondent disallowed certain deductions claimed in reporting that sole proprietorship income and thereby increased such income by $5,525.10. In January 1942, an equal partnership was formed between petitioner and J. C. Garner, known as the Harmon-Garner partnership, for the purpose of operating the Cove Liquor Store, the Lounge Restaurant and the 844 Memorial Drive Liquor Store. A partnership information return, signed by petitioner, was filed for the partnership's 1942 calendar year and petitioner reported his share of the partnership income on his individual return for 1942. Petitioner subsequently bought out J. C. Garner's interest for $45,000 and, after June 30, 1943, operated the three businesses as individual proprietorships for the remainder of 1943. Petitioner's accountant prepared a profit and loss statement for the Harmon-Garner partnership's six months of existence during 1943 (January 1-June 30) indicating the following: Business
Net Profit
Cove Liquor Store
$ 2,358.57
Lounge Restaurant
5,832.90
844 Memorial Drive Liquor
Store
14,757.35
Total
$22,958.82
Division of profits: Petitioner
$11,479.42
J. C. Garner
11,479.40
*142 J. C. Garner received a copy of that partnership profit and loss statement from petitioner's accountant prior to March 15, 1944 and reported his share of the partnership income on his individual return for 1943. But no information return for that partnership was filed for 1943 and petitioner failed to report his share of the income therefrom in his 1943 individual return. Further, although petitioner did report, on his 1943 return, income of $14,468.72 from his proprietorship operation of the 844 Memorial Drive Liquor Store for the period July 1-December 31, 1943, he did not report income from, nor keep books for, his proprietorship operation of the Cove Liquor Store and the Lounge Restaurant during that period. Respondent, consequently, determined that petitioner understated his income for 1943 (a) by his $11,479.42 share of the profits from the Harmon-Garner partnership and (b) by $2,368.57 and $5,832.90, representing profits from the Cove Liquor Store and the Lounge Restaurant, respectively, for the final six months of 1943 (which profits were determined to be equal to the profits those businesses earned under the partnership during the first half of the year). Petitioner claimed, *143 on his 1943 return, deduction for a $50,000 loss from theft by a former bookkeeper. Respondent disallowed this deduction for lack of substantiation. No evidence was presented by respondent regarding this item. We have no information regarding the merits of it and can make no finding with reference thereto. As noted in our preliminary statement respondent's computation of the 1943 deficiency was based in part on adjustments to petitioner's reported income for 1942. No evidence was introduced regarding the adjustment made by respondent in petitioner's rental income for 1942. The remaining adjustment for that year, resulting from attribution to petitioner of all (rather than a partnership share) of income from Murray's Liquor Store and Drive-In, is based on the same grounds as the adjustment in petitioner's 1943 income reported from that source. Petitioner reported income on his income tax return for the calendar year 1943, as listed in detailed schedules which were attached to his return, which totaled as follows: 844 Memorial Drive, net profit
$ 14,468.72
Gate City Liquor Store, petition-
er's 90% of the total net profit of
$104,949.78
94,414.80
Murray's Liquor Store, 226 Ponce
de Leon Ave., net profit
4,971.18
Murray's Liquor Store, 245 Fort
St., net profit
10,871.54
Murray's Liquor Store, 250a Peters
Street, net profit
22,675.78
Total
$147,402.02
To the foregoing total amount was
added income from partnership
39,113.30
Total income
$186,515.32 [1]
*144 From the foregoing total income as reported on his return, petitioner lists the following deductions: Contributions
$ 600.00 (Explained in Schedule D)
Interest
145.00 (Explained in Schedule E)
Taxes
2,807.80 (Explained in Schedule F)
Losses from fire, storm, shipwreck, or
other casualty or theft
50,000.00 (Explained in Schedule G)
Total
$53,552.80 After listing the foregoing deductions petitioner lists as his "Income Tax Net Income" $133,002.02. The $50,000 deduction listed is explained in Schedule G of the return as follows: "Theft by former bookkeeper, $50,000.00." Petitioner, or his agent who prepared his return for the calendar year 1943, was negligent in omitting certain items of income which he received in 1943 from his return for that year. Respondent has not proved by clear and convincing evidence that any part of the deficiency for 1943 was due to fraud with intent to evade tax. Respondent is barred by the provisions of section *145 275(a) of the 1939 Code from assessing any deficiency or penalty against petitioner for the taxable year 1943. 1944-1945 During 1944, petitioner received from his rental collection agent 20 checks aggregating $7,870.78. He reported no rental income on his 1944 return but explained therein that he would do so in an amended return to be subsequently filed. It was stipulated that his net unreported rental income for 1944 was $1,259.27. For 1945, petitioner reported net rental income of $2,262.83 and respondent determined that such income was understated in the amount of $4,987.78. It was stipulated that petitioner's correct net rental income for 1945 was $1,047.33. On January 1, 1944, petitioner sold the fixtures, equipment, business licenses, etc., of the Cove Liquor Store, the Lounge Restaurant, and three other liquor stores solely owned by him. On July 10, 1944, petitioner, his stepson Luther, and his brother-in-law W. F. Burns, hereinafter sometimes referred to as Burns, alleged partners (as hereinafter discussed), executed a contract selling the fixtures, etc., of the 844 Memorial Drive Liquor Store, one of the businesses conducted by the alleged partnership. No capital gain *146 was reported by petitioner on his 1944 return. It was stipulated that petitioner's long-term capital gain on the above sales was $7,103.16, half of which ($3,551.58) is recognized for tax purposes. In arriving at this stipulated figure all the gain from the sale of the 844 Memorial Drive Liquor Store was attributed to petitioner. On January 1, 1944, petitioner, Luther, and Burns executed a document captioned "Partnership Agreement," the pertinent parts of which may be summarized as follows: The three agreed to engage as partners, under the partnership name "Harmons & Burns," in the operation of the 844 Memorial Drive Liquor Store, hereinafter referred to as Memorial Drive Store, and Murray's Liquor Store and Drive-In restaurant (which was called the South Pryor St. Liquor Store and Murray's Drive-In). The partnership capital was stated as $15,000, $5,000 of which was to be contributed in cash by each partner contemporaneously with the signing of the agreement. Money deposited in the partnership bank account was subject to withdrawal only upon the joint signatures of the partners. Each partner, except petitioner, was to devote his full time and attention to the partnership business *147 and could not engage in any other business. The partnership interests, and weekly drawing accounts, were as follows: petitioner, 50 per cent interest, $100 drawing per week; Luther, 25 per cent interest, $50 drawing per week; Burns, 25 per cent interest, $50 drawing per week. It was also stated in the agreement that, at the time of the partnership's formation, petitioner was sole owner of the businesses included in the partnership and that the partnership had the right to purchase from petitioner, at wholesale prices, the inventory of those businesses. Despite the terms of the "Partnership Agreement" the only capital supplied to the alleged partnership businesses came from petitioner. No ledgers were maintained for those businesses by the alleged partnership but journals were kept which indicate that in January 1944, petitioner deposited $15,000 in cash with the South Pryor St. Liquor Store, hereinafter referred to as the Pryor St. Store, $1,000 with Murray's Drive-In, and $5,507.75 with the Memorial Drive Store ($507.75 of which was marked "loans payable"). Although the opening inventories of those three businesses, which inventories were substantial in amount, were carried over *148 from the 1943 closing inventories of each such business, it does not appear that any consideration was actually paid petitioner by the alleged partnership for those inventories nor that there was a capital account for petitioner in which his contribution of those inventories was reflected. Neither does it appear that petitioner was paid, or given credit in a capital account, for contribution of the fixtures, etc., of those businesses to the partnership. The partnership books for the three businesses contain no profit and loss computations for 1944 and 1945 nor capital accounts allocating profit and loss among the alleged partners. Such figures were inserted only in the partnership information returns filed for those years. The journals maintained for the businesses, however, disclose the following withdrawals: For Income
Total
Year
Taxes
Other
Withdrawals
Petitioner
1944
$19,135.31
$4,650.81
$23,786.12
1945
4,710.36
2,916.15
7,626.51
Luther P. Harmon
1944
$19,876.48
$3,371.38
$23,247.86
1945
2,755.37
3,238.45
5,993.82
W. F. Burns
1944
$ 658.64
$2,558.58
$ 3,217.22
1945
1,703.13
2,600.00
4,303.13
At the time of *149 the formation of the alleged partnership Luther was about 25 years of age and had just recently returned from military service. He had little business experience. Burns was then about 70 years old and was not in good health. His wife (petitioner's sister) had been physically incapacitated for a number of years and petitioner had contributed substantial amounts to the support of the Burns family. Burns had been managing Murray's Drive-In restaurant for petitioner for about two years prior to the alleged partnership's formation. In 1944 and 1945, Luther ran the Pryor St. Store while Burns ran Murray's Drive-In and signed the checks for both establishments. Apparently because petitioner was not in high repute with the Georgia state liquor authorities the 1944 and 1945 Liquor licenses for the Pryor St. Store and the 1944 liquor license for the Memorial Drive Store were applied for by Burns, who falsely stated under oath in those applications that (1) no one other than himself was to derive profit from the particular business, (2) no family relation was engaged in the liquor business, and (3) all of the capital for the particular business had been furnished by him. The applications for *150 the 1944 licenses were accompanied by documents stating that petitioner and Luther were selling the Pryor St. Store business to Burns and that petitioner was selling the Memorial Drive Store business to Burns. Those documents were a sham. On July 1, 1944, the alleged Harmons & Burns partnership operation of the Memorial Drive Store was terminated. A document executed on that date recites that Luther and Burns each received $3,500 from petitioner in settlement of all their partnership claims against him arising out of the operation of that store and, presumably, petitioner then became sole owner thereof. In the Harmons & Burns partnership information return filed for 1944 the net profit of the Memorial Drive Store for January 1 - June 30, 1944 was reported as $10,336.68, distributed one-third ($3,445.56) each to petitioner, Luther, and Burns. As mentioned above petitioner, Luther, and Burns, on July 10, 1944, executed a contract selling the fixtures, etc., of the Memorial Drive Store to a disinterested party for $10,000. The check for that sum was made out by the purchaser to Burns, who endorsed it. The alleged Harmons & Burns partnership was not a bona fide partnership. The three *151 businesses allegedly operated by the partnership during 1944 and 1945 were solely owned by petitioner and the entire net profits therefrom are taxable to him. In an amended answer respondent contends that both the sales and purchases of the Pryor St. Store were understated in the partnership returns filed for 1944 and 1945, the effect being that the net profit from that source, as reflected in petitioner's returns, was further understated for those years. Respondent, therefore, claims additional deficiencies and penalties for those years of $22,487.66 and $11,243.83, respectively, for 1944 and $1,297.93 deficiency and $648.96 penalty for 1945. Reported sales of the Pryor St. Store were not understated in 1944, but were understated by $4,500 in 1945. Reported purchases were not understated in 1944, but were understated by $3,700 in 1945. In 1944, Robert Carpenter approached petitioner and proposed that the latter enter a joint venture with him to operate the Cox-Carlton Hotel. Petitioner was not interested but suggested that Luther might be and, at the same time, advised Luther that it appeared to be a favorable deal. A short time prior to July 27, 1944, petitioner gave Luther *152 $25,000 for which Luther gave a receipt stating that the money was in payment of his share of the profits from the alleged partnership which existed between him and petitioner from 1938 through December 31, 1943. It appears, however, that that money was either a gift or a loan from petitioner to Luther. On July 27, 1944, Luther and Carpenter executed a partnership agreement stating that they intended to operate the Cox-Carlton Hotel as an equal partnership with Carpenter having the "sole and exclusive management and operation of said hotel." For those services Carpenter was to receive a salary plus room and board. Luther invested $25,000 in the venture. On August 9, 1945, Luther received a check for $9,244.15 from Carpenter, representing his share of the venture's earnings. Petitioner had no interest in and got no part of those earnings. Neither was petitioner connected with nor did he exercise control over the venture itself. On September 5, 1946, Luther was repaid his $25,000 investment by Carpenter and his interest in the venture was then terminated. Luther, not petitioner, was engaged in the joint venture with Carpenter to operate the Cox-Carlton Hotel. No part of the earnings *153 from that venture in 1945 is taxable to petitioner. Petitioner owned about 50 acres of land which he had unsuccessfully tried to sell for use as a housing subdivision. In 1945, he decided to farm the land for profit. He built a tenant house and barn, bought a tractor, mules, plows, and other farm implements, employed labor and sought the aid of the County Agent in running terraces, planted cover crops and turned them under, bought and planted 1,500 fruit trees and 500 grapevines, and arranged for his accountant to keep appropriate books and records. He did not live on the farm in 1945. Fruit trees take about 3 or 4 years to bear fruit and, as a consequence, no sales were made in 1945. Petitioner deducted $3,263.50 as a loss from his farm operation for 1945, which represented the amount of his operating expenses for that year. Petitioner was in the business of farming during 1945. Petitioner's returns for 1944 and 1945, were prepared by his accountant. Prior to the accountant's preparation of the 1944 return respondent's agents began checking petitioner's returns for prior years. The accountant spent a great deal of time with the agents and, as a result, never fully completed petitioner's *154 1944 return. Consequently, he appended a statement to that return, which was signed by petitioner and filed June 15, 1945, to the effect that the return was incomplete and that an amended return would be filed within 60 days. Respondent's agents thereafter told the accountant that there was no need to file an amended return for the petitioner since they were going to audit petitioner's books for 1944 anyway. No amended return was therefore filed. Petitioner knew that respondent's agents were checking him. No part of petitioner's deficiencies for 1944 or 1945 was due to fraud with intent to evade tax. Opinion BLACK, Judge: 1943 Petitioner filed his 1943 return more than three years prior to respondent's mailing of the deficiency notice applicable to such year. However, respondent contends that assessment of the deficiency for 1943 is not barred by the 3-year statute of limitations in section 275(a), Internal Revenue Code of 1939, because at least part of the deficiency was due to fraud. Section 276(a) of the 1939 Code. [1]
*155 Petitioner has made it plain, both in his pleadings and statements at the trial, that he chooses to rest his case solely on the bar of the 3-year statute of limitations. He assigns no error in his pleading to the adjustments made by respondent in his reported net income for 1943 or 1942. [2]
Respondent bears the burden of proving the facts necessary to establish an exception to the 3-year statute. C. A. Reis, 1 T.C. 9; see also section 1112 of the 1939 Code. Here, where respondent relies upon fraud to establish the exception, he must prove by clear and convincing evidence, L. Glenn Switzer, 20 T.C. 759, that petitioner understated income for 1943 by some amount and that such understatement was due to fraud with intent to evade tax. John Kehoe, 34 B.T.A. 59, 70, affd. 309 U.S. 277; Michael Potson, 22 T.C. 912. If respondent successfully meets that *156 burden the bar of the statute of limitations is removed not only as regards the portion of the 1943 deficiency determined on the basis of understatements in 1943 income but, also, as regards 25 per cent of the 1942 deficiency which was included in computing the total deficiency for 1943. Lawrence W. Carpenter, 10 T.C. 64; William W. Todd, 10 T.C. 655; Tressler v. Commissioner, (C.A. 4) 206 Fed. (2d) 538. With reference to the issue of fraud we said in L. Glenn Switzer, supra, as follows: "The burden of proof in fraud cases is, of course, upon the respondent. It must be clear and convincing proof. Evidence of inefficiency and ignorance of accounting methods are not sufficient to establish fraud. Walter M. Ferguson, Jr., 14 T.C. 846 (1950); W. F. Shawver, Co., 20 B.T.A. 723 (1930). * * * "Fraud implies bad faith, intentional wrongdoing, and a sinister motive. It is never imputed or presumed. Mere suspicion of fraud and mere doubts as to intentions of the taxpayer are not sufficient proof of fraud." [Citing numerous authorities.] We have endeavored to give in our findings of fact as nearly as practicable *157 a full statement of the facts upon which respondent relies in seeking to establish fraud and take the year 1943 from without the 3-year statute of limitations. Undoubtedly these facts show that petitioner did omit from his income tax return for 1943 some considerable amounts of income which he had received in 1943 and which he should have reported. In our findings of fact we have given a resume of the income which petitioner reported on his 1943 return. His 1943 return is in evidence. The year 1943 seems to have been a big year in his liquor business as compared to the other years which we have before us. Our findings of fact show that during a part of 1943 petitioner was a partner with W. R. Hester and M. L. Hayes in the operation of the Gate City Liquor Distributors. The interests of petitioner and Hester were 47 1/2 per cent each and Hayes' interest was 5 per cent. This partnership was dissolved February 28, 1943. On that latter date petitioner bought out the interests of Hester and Hayes and continued to run the business as a sole proprietorship from March 1 to December 31, 1943. On the latter date the business was discontinued. Petitioner's income tax return for 1943 reported *158 net income from the Gate City sole proprietorship of $94,414.80. He did not report his share of the income of Gate City partnership between himself, Hester and Hayes, which partnership was dissolved February 28, 1943. The information return of said partnership showed that petitioner's share of this income was $17,640.92. So far as we can see from an examination of petitioner's 1943 return he did not report this $17,640.92 as income. Someone else other than Hayes or petitioner made out petitioner's return for 1943. Just who made it out for him the evidence does not show. It seems clear to us that it was negligence on the part of the agent or accountant who made out petitioner's return to fail to report this partnership income and this negligence, we think under the law, would be attributed to petitioner, but the evidence does not convince us that its omission was deliberate and intentional on petitioner's part with the fraudulent purpose to evade tax. Negligence, however great, is not equivalent to fraud. Mitchell v. Commissioner, 118 Fed. (2d) 308. In this Mitchell case, the Fifth Circuit held that fraud means actual, intentional wrongdoing and the intent required is *159 the specific purpose to evade a tax believed to be owing. Mere negligence, whether slight or great, is not the equivalent of fraud. See also our decision on remand in William E. Mitchell, 45 B.T.A. 822. What we have said with reference to the omission from the return of petitioner's share of the income of the Gate City partnership, we think is also applicable to the Harmon-Garner partnership which operated for a part of the year 1943 the Cove Liquor Store, the Lounge Restaurant and the Memorial Drive Store. This partnership was dissolved June 30, 1943, and thereafter petitioner conducted the business as a sole proprietorship. Petitioner's share of the profits of this partnership up to the time of its dissolution was $11,479.42. So far as we can see after a careful examination of petitioner's 1943 return this $11,479.42 was not included in his return. Again we say that there is every indication that petitioner, or his agent who made out the return, was negligent in failing to report this $11,479.42 on his return and he should have done so. While it is clear to us that negligence, either on the part of petitioner or his agent who prepared the return, existed the evidence *160 does not convince us that petitioner's failure to report his share of the Harmon-Garner partnership for the period January 1 to June 30, 1943, was done with fraudulent intent to evade tax. What we have already said with reference to the fact that mere negligence, however great, does not constitute fraud when we were discussing petitioner's omission from his return of income from the Gate City partnership is, we think, equally applicable here and need not be repeated. Respondent also in his brief lays a great deal of stress on the written partnership agreement which was executed by petitioner and his stepson, Luther P. Harmon, in 1938 and continued until December 31, 1943. Apparently Luther was about 25 years of age at the time the alleged partnership was discontinued in 1943. Petitioner's share of the income from this alleged partnership was $38,536.03, which he reported on his return for 1943. Apparently Luther reported an equal amount on his return for that year. Respondent has added the $38,536.03 reported by Luther on his return to petitioner's return and has alleged that it was fraudulently omitted by petitioner from his return. It may well be that if the statute of limitations *161 had not run against any deficiency for 1943, unless fraud is established, and we were trying the issue as to whether this family partnership between petitioner and his stepson Luther was a valid one, under the doctrine of the Supreme Court in the Culbertson case, we might well hold against petitioner on such an issue. But we do not have that issue before us to decide in this proceeding. What we do have to consider as one of the factors in respondent's effort to establish fraud for 1943 is whether this alleged partnership between petitioner and his stepson Luther was fraudulently conceived and, in the year 1943, held out by petitioner to be a legal and valid partnership when he well knew it was no such thing. We are unable under the evidence to reach any such conclusion or to make any such finding of fraud. Therefore, to sum up as to the taxable year 1943, after a careful study and consideration of the evidence we conclude and hold that respondent has not proved by clear and convincing evidence that any part of the deficiency for 1943 was due to fraud with intent to evade tax. We further conclude and hold that respondent is barred by the provisions of section 275(a) of the 1939 Code *162 from assessing any deficiency or penalty against petitioner for the taxable year 1943. 1944-1945 At the hearing the amounts of petitioner's rental income for 1944 and 1945 and capital gain from sales of certain business properties in 1944 were stipulated. Effect will be given to those stipulations in the Rule 50 computation and we need not, therefore, discuss those items further. Respondent determined that the alleged Harmons & Burns partnership, formed to operate the Pryor St. Store, Murray's Drive-In, and the Memorial Drive Store, was not recognizable for tax purposes. Respondent, therefore, attributed all the 1944 and 1945 net profits of that alleged partnership to petitioner. [3] We have found that respondent's determination was correct. In reaching that finding we have applied the well known criteria prescribed by the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, to wit: "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, *163 the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" The facts which influenced our finding are as follows: The partnership agreement stated that the partnership interests of petitioner, Luther, and Burns were to be 50 per cent, 25 per cent and 25 per cent, respectively, and that each was to contribute $5,000 in cash to the partnership capital. However, petitioner was the only one who supplied capital to the partnership which included, in addition to his cash contributions, the inventories, fixtures, etc., of the three businesses taken over by the partnership. Moreover, no credit was given petitioner in the partnership books for his contribution of those inventories, fixtures, etc. The partnership books contain no profit and loss computations nor capital accounts allocating the same among the alleged partners. The journals maintained for the three businesses do show withdrawals *164 but they were out of proportion to the percentage interests of the partners stated in their agreement. Similarly, the profit realized on the sale of the Memorial Drive Store on July 10, 1944, was reported in the partnership return filed for that year as having been distributed in thirds between the alleged partners, rather than in proportion to their stated partnership interests. Such profit distribution was reported even though petitioner supposedly bought out the partnership interests of Luther and Burns in that store on July 1, 1944, which would have made him the sole owner thereof and thus entitled to all the profits realized on the July 10th sale. The liquor licenses for the Pryor St. and Memorial Drive Stores were applied for by Burns, who falsely represented himself (supported by sham documents) as the sole owner of and investor in the businesses. Such device appears to have been resorted to because of petitioner's dubious standing with the state licensing authorities. Burns himself was to and did manage Murray's Drive-In for the alleged partnership, but that is what he had previously been doing as an employee of petitioner's. Since Burns' wife (petitioner's sister) was incapacitated *165 and Burns himself was not in good health, petitioner was concerned with providing for Burns' family. As for Luther, he was possessed of very little business experience when the alleged partnership was formed. When all these facts are considered it seems clear to us that no bona fide partnership existed within the rule announced by the Supreme Court in the Culbertson case. Accordingly, we sustain respondent's determination attributing all the net profits from the alleged Harmons & Burns partnership to petitioner. Respondent in an amended answer asks for additional deficiencies and fraud penalties, maintaining that both sales and purchases of the Pryor St. Store were understated in the Harmons & Burns partnership returns for 1944 and 1945, thereby resulting in further understatement of income from that business in petitioner's returns. Respondent's determination is based on the fact that the 1944 and 1945 totals of the sales column and purchases column in the journal of the Pryor St. Store exceed, respectively, the reported sales and purchases for those years. Such excesses are regarded by respondent as representing understatements of income, the amounts of which are listed in our *166 preliminary statement of this case. Petitioner introduced a detailed exhibit, supported by testimony of his accountant, showing that the excess sales reported in the journal for 1944 actually were redeposits in the business' bank account of funds previously withdrawn from that business by petitioner. The major portion of the excess sales reported in the journal for 1945 was explained by the accountant as resulting from capital contributions erroneously credited to sales and from the crediting to sales of checks which later proved to be bad and were returned by the bank. Petitioner admits that sales were understated by $4,500 in 1945, as a result of a mathematical error made in the accountant's office. The accountant also explained most of the apparent understatements in purchases for 1944 and 1945, indicating that such resulted primarily from inclusions of purchases made during the previous year in the journal for the particular year involved, but admitted that purchases were understated by at least $3,700 in 1945. We think those explanations of the discrepancies between the journals and returns of the alleged partnership are entitled to credit. Consequently, we hold that respondent, *167 who bears the burden of proof as regards these additional deficiencies and penalties, has failed to carry such burden except to the extent of the aforementioned $4,500 and $3,700 understatements of sales and purchases, respectively, in 1945. Respondent determined that petitioner, not Luther, was the actual participant in a joint venture to operate the Cox-Carlton Hotel. Consequently, he attributed to petitioner Luther's share of the 1945 earnings of that venture. It is not clear whether the $25,000 invested by Luther in the venture was a gift or a loan from petitioner but we deem that of little significance in view of the fact that petitioner was in no way connected with the enterprise and exercised no direct or indirect control over it or the income therefrom. In this respect the situation is different and distinguishable from the typical family partnership case. The income from the venture was in fact received by Luther who did with it what he wished. He did not serve as a conduit to petitioner of that income. After carefully reviewing the evidence we have found that respondent erred in determining that Luther was not, and petitioner was, the actual participant in the Cox-Carlton *168 Hotel venture. Respondent determined that expenses incurred by petitioner in developing a farm in 1945 were nondeductible business expenses, under section 24(a)(1) of the 1939 Code, rather than deductible expenses incurred in a "trade or business" under section 23(a). He, therefore, disallowed petitioner's deduction in the 1945 return of a loss from that farming operation. Whether or not petitioner's activities constituted the carrying on of a trade or business is a question of fact as to which petitioner bears the burden of proof. Higgins v. Commissioner, 312 U.S. 212. The answer to that question here turns upon whether petitioner intended to engage in farming for a profit or merely for pleasure. Thacher v. Lowe, (D.C.S.D.N.Y.) 288 Fed. 994; Edwin S. George, 22 B.T.A. 189. A study of the pertinent facts convinces us that petitioner undertook the farming operation for profit. Since those facts are succinctly stated in our findings it would serve no purpose to repeat them here. Respondent's disallowance of petitioner's farm loss is not sustained. Finally, we deal with the question of whether any part of petitioner's deficiencies for 1944 *169 or 1945 was due to fraud with intent to evade tax. During the 1945 calendar year respondent's agents were checking petitioner's returns for prior years. Petitioner's accountant, because of the time spent working with those agents, did not finish petitioner's 1944 return so appended thereto a statement making it quite clear that the return was incomplete. Petitioner signed the return with the attached statement. Such conduct by petitioner, i.e., calling attention to his 1944 return in that manner, certainly is not consistent with the actions of one attempting to conceal true income and evade payment of tax thereon. Respondent's agents said that they intended to check petitioner's 1944 return anyway (as well as those for prior years), which explains petitioner's failure to later file a complete amended return for 1944. There is nothing to show any fraud in petitioner's return for 1945. After a careful study of the record we conclude that respondent has failed to prove by clear and convincing evidence that any part of petitioner's deficiencies for 1944 or 1945 was due to fraud. Decision will be entered under Rule 50. Footnotes
1. Petitioner's figure on his return for the foregoing items as added is $186,555.32, which is $40 more than the figure we have given from the return. Apparently petitioner has made an error of $40 in his addition.↩
1. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩
2. As noted in our preliminary statement, respondent determined a deficiency in petitioner's tax for 1942 and, in accordance with section 6(a), Current Tax Payment Act of 1943, included 25 per cent of the 1942 deficiency as part of the deficiency determined for 1943.↩
3. In determining those net profits respondent made allowances for salaries to Luther and Burns.↩