Herman Epstein and Martha Epstein v. Commissioner.
Epstein v. Commissioner
Docket No. 60243.
United States Tax Court
T.C. Memo 1959-103; 1959 Tax Ct. Memo LEXIS 144; 18 T.C.M. (CCH) 455; T.C.M. (RIA) 59103; May 20, 1959
*144 Martin S. Eisenberg, Esq., for the petitioners. Norman L. Rapkin, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in the Federal income tax of petitioners for the year 1946 in the amount of $16,783.25, an addition to tax under section 293(b) of the Internal Revenue Code of 1939 in the amount of $8,391.63, and an addition to tax under section 294(d)(2) in the amount of $1,571.47. Respondent's "EXPLANATION OF ADJUSTMENTS" in the statement attached to the notice of deficiency was as follows: "In the absence of adequate records, your taxable net income has been computed upon the basis of increase in net worth during the taxable year 1946 with adjustment for personal and other non-deductible amounts paid. Your reported taxable income has been increased $27,401.01, computed as shown in Exhibit A, attached hereto." "Exhibit A" referred to therein was a "COMPUTATION OF NET INCOME BY NET WORTH METHOD." The allegation of errors in the petition is as follows: "a) The examining agent was in error in computing the gross income of the petitioner. "b) Fraud assessment should not have been made. "c) The agent *145 erroneously arrived at the net worth of the petitioner." The affirmative allegations in respondent's answer were as follows: "7. Herman Epstein and Martha Epstein filed a false and fraudulent Federal income tax return for the taxable year 1946 with intent to evade tax, and a substantial part of the deficiency for said year asserted in the statutory notice of deficiency is due to fraud with intent to evade tax. In support whereof the respondent relies upon the following facts: "a) Heretofore Herman and Martha Epstein, then being subject to Federal income tax for the calendar year 1946 and having a taxable net income for said year in the amount of $62,531.44 knowingly, willfully, and fraudulently filed a Federal income tax return for the calendar year 1946 in which they falsely and fraudulently with intent to evade tax reported a taxable net income in the amount of $35,130.43, whereas they well knew that said return was false and fraudulent and that the result thereof would be to defraud the Government of the United States of income tax which was lawfully due to it on their aforesaid taxable income. "b) During the taxable year 1946 Herman Epstein was engaged in the wholesale *146 grocery business and operated ten retail grocery self-service stores. Adequate books and records were not maintained for said business, and the respondent has computed the aforesaid unreported income on the basis of an increase in net worth and of non-deductible expenditures of the petitioners as set forth in Exhibit A, a copy of which is attached to the original petition." Petitioners filed no reply herein. At the trial and on brief petitioners accept as correct the use by respondent of the so-called net worth method of computing petitioners' income for the taxable year and also the "COMPUTATION OF NET INCOME BY NET WORTH METHOD" above referred to with the exception of one amount appearing therein, to-wit: The sum of $190,385.85 shown as "Capital in Business" as of December 31, 1946. Petitioners contend that this figure reflects the inventory of petitioners' business as of that date in an amount which exceeded its true value by $71,000. Findings of Fact Petitioners are husband and wife and live on Long Island, New York. They filed their joint Federal income tax returns for the year 1946 with the collector of internal revenue for the first district of New York. Since the income *147 here involved is that of petitioner Herman Epstein, he will be sometimes referred to herein as "petitioner." The petitioners' original income tax return for 1946 reported an adjusted gross income of $35,996.11. In this return the "inventory at end of year" of petitioner's business was shown as $366,560.60. In the petitioners' amended income tax return for 1946, dated March 4, 1947, but filed on March 4, 1948, the "inventory at end of year" was shown as $295,560.60. As a result of this change the amended return reported a net loss of $35,003.89. Petitioners timely executed Forms 872 extending the period of limitations upon assessment of income and profits tax for the taxable year 1946 to June 30, 1956. The notice of deficiency herein was mailed to the petitioners on August 25, 1955. Respondent computed the petitioners' adjusted gross income for the taxable year 1946 by the net worth method to be in the amount of $63,397.12, resulting in additional, unreported income in the amount of $27,401.01. Petitioners agree to the correctness of the respondent's computation of the petitioners' 1946 adjusted gross income according to the net worth analysis, except with regard to the item "Capital *148 in Business" as of the end of the year 1946. Petitioners assert that this item should be in the amount of $11,9385.85, whereas the respondent contends that this amount should be $190,385.85. Petitioner has been in the grocery business during most of his adult life. His formal education ceased when he was in the fifth grade in public school. Prior to 1945 he owned and operated as a sole proprietor 10 retail self-service grocery stores, and also a wholesale grocery business, the primary function of which was to supply the retail outlets. During the years 1945 and 1946 petitioner sold all of the retail stores. In the latter part of 1946 petitioner wished to sell the wholesale business. After he refused an offer to purchase this business for the reason that the proposed purchasers could not satisfactorily secure the payment of the price offered, petitioner was approached in December 1946 by three of his salesmen, two of whom were his nephews, who suggested that a group of retail grocers might be interested in taking over the business. After petitioner had discussed the matter with his attorney with particular reference to securing the payment to him of the purchase price ultimately to *149 be agreed upon, it was decided by petitioner and the three salesmen that a corporation be organized, that petitioner would convey the wholesale business to it at an agreed price, that stock of the corporation equivalent to the agreed price should be issued to petitioner, that this stock would be sold to retail grocers, and that pending such ultimate disposition of the stock, the three salesmen would act as officers of the corporation and petitioner would be its general manager and direct its operation. Accordingly, on December 30, 1946, a corporation known as Inter-County Associated Grocers, Inc., was organized with authorized preferred stock of 1,000 shares, each with a par value of $1,000, and with authorized common stock of 1,000 shares with no par value. On January 2, 1947, petitioner conveyed to the corporation his business in return for its assumption of all of the outstanding liabilities of his sole proprietorship plus $180,000 to be paid by the issuance to him of 180 shares of the corporation's preferred stock and 200 shares of its common stock. Petitioner immediately began to try to sell this stock. His plan was to sell 2 shares of preferred stock to a retail grocer at par *150 with 1 share of common stock going with 2 shares of preferred at no separate cost. In the first part of 1947 petitioner accomplished the sale of 23 shares of preferred stock for $23,000. The sum of $180,000 represented the excess of the cost of the assets of the sole proprietorship over the amount of its liabilities assumed by the corporation. Included in the assets was the inventory which petitioner had always kept on a firstin first-out cost basis. Inventory cards were kept which reflected the amount of inventory on hand and the cost of each item was shown to be the cost of the last such item purchased. In 1946 a large part of petitioner's inventory consisted of groceries bearing little-known brands which were not nationally advertised. In the latter part of that year better-known and nationally advertised "brands," which had been unavailable during the war, began to come into the market, and in the first part of 1947 became generally available. The cost to petitioner of the inventory of his sole proprietorship as of December 31, 1946, was at least $366,560.60. At some time in 1947 prior to July 19 some of the officers and stockholders of the corporation complained that the *151 inventory of petitioner transferred to it was not worth the amount computed on the first-in first-out cost basis. In order to satisfy these complaints and to assist him in the sale of his unsold stock (all but 23 shares of the 180 shares of preferred stock issued to him), petitioner consented to a modification of the price to be paid by the corporation for the assets of his sole proprietorship and to reflect this modification he surrendered to the corporation 71 shares of his preferred stock. That part of the modification of the price representing a devaluation of the inventory was $68,897.27. Petitioner sold only 23 shares of the preferred stock issued to him and realized therefrom $23,000. The "net worth analysis" upon which the deficiency herein is predicated is as follows: COMPUTATION OF NET INCOME BY NET WORTH METHOD
ASSETS:
12/31/45
12/31/46
Cash - Montrose Industrial Bank
$ 548.63
Bay Ridge Savings Bank
4,496.33
$ 165.16
Manufacturers Trust Co.
5,230.62
1,415.27
Cash on Hand
1,000.00
1,000.00
Capital in Business
132,472.94
190,385.85
Automobile
1,500.00
1,500.00
Government Bonds
2,850.00
2,850.00
Real Estate Resident
12,500.00
12,500.00
Real Estate Resident 5/29/46
24,000.00
Total Assets
$160,598.52
$233,816.28
LIABILITIES: Loans Payable
$ 5,000.00
$ 5,000.00
Loans Payable
2,000.00
2,000.00
Loan Payable
3,800.00
Mortgage Payable
6,974.22
6,814.92
Mortgage Payable
12,000.00
Total Liabilities
$ 17,774.22
$ 25,814.92
Net Assets
$142,824.30
$208,001.36
Increase
$ 65,177.06
Cost of Living - Estimated
7,500.00
Federal Income Taxes Paid
3,505.51
State Income Taxes Paid
265.68
Insurance Premium
695.80
$ 77,144.05
Adjustment for Capital Gains - 50%
13,746.93
Adjusted Gross Income - Net Worth Basis
$ 63,397.12
Adjusted Gross Income per Original Return
35,996.11
Additional Income on Net Worth Basis
$ 27,401.01
*152 Petitioner's capital account on the books of his sole proprietorship reflected unidentified withdrawals by him during 1946 in the total amount of $9,212.15. A journal entry on the books of petitioner indicates payments of accounts payable on account of specific purchases from six named suppliers in a total amount of $31,205.96, of which amount $435.99 was charged to "Discount on Purchase" and $30,769.97 was charged to "Herman Epstein, Capital Account." Petitioner's books and records did not disclose the mechanics by which these accounts payable were paid. The purchases here involved were recorded in petitioner's purchase register, but no receipts or invoices evidencing the purchases were made available to respondent's agents. From the data contained in their "net worth analysis" set forth above these agents were unable to understand how petitioner was able to make the payments here in question. Therefore they "assumed [that the merchandise] hadn't been picked up." They made no effort to ascertain from the named suppliers whether the merchandise covered by these purchases had been delivered to and paid for by petitioner. They did not disregard these purchases in their computation *153 of petitioners' income by the net worth method. At the trial herein petitioner gave several explanations as to the source of these payments which were inconsistent with themselves and with the data in the "net worth analysis" agreed to by petitioner. On November 20, 1957, petitioner was convicted by a Federal District Court on a plea of guilty of filing false and fraudulent income tax returns for the years 1950 and 1951. On February 28, 1950, petitioner was convicted by a New York court of grand larceny first degree and grand larceny second degree. Opinion KERN, Judge: Only the taxable year 1946 is before us in this case. For that year respondent determined a deficiency in petitioners' Federal income tax in the amount of $16,783.25 by use of the so-called net worth method. Petitioners do not question the propriety of the use of that method by respondent and question the accuracy of his "net worth analysis" in only one respect, that is, the computation of the amount of the item "Capital in Business" shown as an asset of petitioners on December 31, 1946, which was based upon the cost of inventory held by Herman as of that date. Petitioners contend that the value of that inventory *154 was less than its cost as of that date and point to events occurring in 1947 as substantiating their contention. The evidence in this case requires us to find that the cost to Herman of this inventory as of that date was at least $366,560.60, the amount used by respondent in his computation, and petitioners do not seriously contend otherwise. In making use of the so-called net worth method of calculating the annual income of a taxpayer only the cost to the taxpayer of the assets used in such calculation is material. The fluctuating market values of such assets are irrelevant and immaterial. The proper concern is not as to what the taxpayer could get for such assets on the open market, but as to what part of the taxpayer's annual income was spent for them. For example, if a taxpayer, whose income for a taxable year is being computed on the net worth method, purchases a house for $10,000 in the fourth month of that year which increases in value to $15,000 by the last of the twelfth month of that year and is still owned by him, it would be shown as an asset of taxpayer in the net worth computation of the taxpayer's income in the amount of $10,000. The reason for this is that "net *155 worth increases must be attributable to taxable income," Holland v. United States, 348 U.S. 121, and not to unrealized and nontaxable increments in value. The converse would of course be true, that the cost of the asset of the taxpayer should be used in such computations regardless of an unrealized diminution in the value of such asset. Accordingly, on the issue of the deficiency in petitioners' income tax for the taxable year, we conclude that the contentions of petitioners in regard thereto are without merit and that such deficiency is in the amount determined by respondent. We now turn to the question of whether respondent, upon whom is the burden of proof, has proved herein facts which would warrant the additions to tax for fraud under section 293(b) of the Internal Revenue Code of 1939. Upon this issue the respondent's contention is predicated on the following facts which he claims are established by the record: (1) Respondent's agents in investigating petitioners' income tax liability for the years 1944 and 1945 found that "there was $20,000-odd each year unexplained increases in net worth" upon which they "assumed income from the business, unreported income *156 from the business of the taxpayer" and "recommended that fraud penalties be placed on these years." (2) The facts set forth in our findings relating to purchases of and payments for $31,205.96 of merchandise prove that Herman "[padded] his purchases during the year 1946 with the intent to understate his gross profit from sales and to fraudulently conceal his true income." (3) Petitioner's testimony with regard to the source of the cash with which he claimed to have paid for this merchandise was inconsistent, implausible, and unreliable. (4) Petitioner was twice convicted of crimes. (5) Petitioner "was intentionally taking steps in order to make a 1947 capital loss look more like a 1946 ordinary loss." We consider the matters stated above under (1) and (5) to be irrelevant and immaterial to the question of petitioner's fraudulent intent with regard to the deficiency herein determined. With regard to the issue of fraud we consider the following pertinent facts to be established by the record: Petitioner, subsequent to the taxable year, was twice convicted of crimes; petitioner gave inconsistent and implausible testimony with regard to the source of cash with which he paid *157 for certain merchandise, which merchandise respondent appears to have included in the inventory forming a basic part of the computations appearing in respondent's "net worth analysis"; and petitioner failed to return as gross income for the taxable year an amount determined by the so-called net worth method to be $27,401.01. Upon these facts we are unable to conclude that respondent has adduced clear and convincing proof of fraud. See James Nicholson, 32 B.T.A. 977, 989, affd. 90 Fed. (2d) 978; Harold B. Franklin, 34 B.T.A. 927, 938; Estate of Louis L. Briden, 11 T.C. 1095, 1133, affd. 179 Fed. (2d) 619. The addition to tax determined by respondent under section 294(d)(2) is not here in issue. Decision will be entered under Rule 50.