Tom Dilos a/k/a Tom Dimitrakopoulos v. Commissioner.
Dilos v. Commissioner
Docket No. 2726-63.
United States Tax Court
T.C. Memo 1965-66; 1965 Tax Ct. Memo LEXIS 263; 24 T.C.M. (CCH) 359; T.C.M. (RIA) 65066; March 26, 1965
J. Arthur McNamara, 20 Broadway, Valhalla, N. Y., for the petitioner. Frederic S. Kramer, Kennard L. Mandell, Lee S. Kamp, Michael D. Weinberg, and Marie L. Garibaldi, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioner's income tax and additions to tax as follows: Additions
to Tax
Sec. 6653(a)
Year
Income Tax
I.R.C. 1954
1957
$273.72
$13.69
1958
459.00
22.95
1959
705.79
35.29
The issues are *264 (1) whether petitioner understated income from tips earned at Whyte's and other restaurants, (2) whether petitioner is entitled to deductions for union dues and work clothing, and (3) whether respondent erred in determining additions to tax under section 6653(a). [1]
This is one of a group of cases brought by waiters at Whyte's Restaurant, 145 Fulton Street, New York City. Although the cases were not consolidated, the parties have stipulated that certain evidence shall be considered in all such cases. Findings of Fact Some of the facts have been stipulated and are so found. Petitioner was a resident of New York City, New York. He filed his Federal income tax returns for the years 1957, 1958, and 1959 with the district director of internal revenue, Manhattan district, New York, New York. During the taxable years petitioner worked at various restaurants in and around New York City. He was a waiter at Whyte's Restaurant, *265 145 Fulton Street, New York City, for part of 1958 and all of 1959. Findings Regarding Whyte's Restaurants Reference is made to the report of the case of Barry Meneguzzo, 43 T.C. - (1965); all findings of fact in such report under the heading "Findings Regarding Whyte's Restaurants" are hereby found and such findings are incorporated herein by this reference. Other Findings Petitioner began working at Whyte's downtown in July 1958. He worked only at lunch time. At least until the end of 1959, petitioner's station was near the Fulton Street entrance to the main dining room. It was a poor station, since customers would often refuse to sit there if there were other tables vacant; this was especially true during the winter, when opening the door created cold drafts. Petitioner was an inexperienced, relatively inefficient waiter during the years in issue. On one occasion he was threatened with discharge; on another, he was laid off for a week. Petitioner's inefficiency caused his customers to tip him at a much lower rate than the average waiter at Whyte's received. Petitioner occasionally worked at banquets at Whyte's. Petitioner first worked as a waiter in late October 1957, *266 shortly after his discharge from the Army. He worked at lunch time in the basement room of the 1347 Restaurant, in the Times Square area of New York City. He received tips of about $2 per day at this job. He was not, however, a good waiter, and was discharged after about two months. Petitioner received tips totaling approximately $100 from 1347 Restaurant in 1957. During the latter part of 1957 petitioner began working at the Kenjay Restaurant, New York City. His job there was that of waiter's helper; he took the orders from the waiters and gave them to the kitchen, then took the food from the kitchen and gave it to the waiters. Petitioner worked 5 or 6 nights per week at Kenjay. He usually worked with 2 waiters; sometimes he worked with 3, and in 1958 he sometimes worked with one. Petitioner was tipped like a busboy, each waiter giving petitioner a portion of his tips. Petitioner usually received about $1.25 from each waiter. Kenjay Restaurant went out of business early in 1959. Petitioner received tips from his work at Kenjay in 1957, 1958, and 1959 of $125, $625, and $50, respectively. In 1958 petitioner occasionally worked as a waiter at three private clubs. Petitioner received *267 no income from this work in addition to the amounts, totaling $64, which were reported on his 1958 income tax return. For the greater part of 1959, petitioner worked at a restaurant called The Round Table. The Round Table was a night club, of the type known as "twist joints." The Round Table imposed a $3 cover charge; i.e., each customer was charged $3 just to sit at the table, in addition to any charge for food or drinks. Many patrons ate and drank very little. Petitioner worked with an experienced waiter as his partner; he usually worked 5 nights per week. Petitioner received tips of $1,600 from The Round Table in 1959. During the years in question, petitioner kept daily records of his tip income in a small diary. Each year he presented his records to the person who filled out his returns; afterwards, the records were returned to petitioner. Sometime after his return for 1959 was filed, petitioner's records, along with a suitcase full of clothing, were stolen by the man with whom petitioner had been sharing an apartment. Petitioner has been unable to secure the return of his records. Petitioner reported tip income of $200, $800, and $1,500 on his Federal income tax returns *268 for 1957, 1958, and 1959, respectively. Respondent determined understatements of petitioner's tip income for 1957, 1958, and 1959 of $338.50, $1,624.56, and $2,137.62, respectively. Respondent arrived at the amounts of such understatements by attributing to petitioner for each year tip income equal to 200 percent of his wages from Whyte's downtown plus 100 percent of his wages from other restaurants, and then subtracting the tip income reported on petitioner's income tax return for the particular year. Petitioner understated his tip income in each of the years 1957, 1958, and 1959. Petitioner claimed deductions in the taxable years for contributions, taxes, medical expense, and other items. Respondent disallowed all such deductions as unsubstantiated. Respondent also determined additions to tax under section 6653(a). Petitioner did not produce records to support the amounts he reported as tip income. Respondent was reasonable in using a formula to determine the tip income earned by petitioner at Whyte's downtown. Opinion The first issue is whether respondent erred in using a formula to determine that petitioner understated his tip income earned at Whyte's downtown in 1957, *269 1958, and 1959. Respondent relies upon section 446(b) of the 1954 Code and section 1.6001-1(a), Income Tax Regs. Respondent also relies upon the decisions in Anson v. Commissioner, 328 F. 2d 703 (C.A. 10, 1964), affirming a Memorandum Opinion of this Court; Mendelson v. Commissioner, 305 F. 2d 519 (C.A. 7), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 877 (1962); Carroll F. Schroeder, 40 T.C. 30 (1963); and Dorothy L. Sutherland, 32 T.C. 862 (1959). Petitioner contends that he was exempted by the controlling regulations from all record-keeping requirements, and that in any event respondent's formula was arbitrary and erroneous in several respects. Petitioner also claims he kept adequate records. Petitioner testified that in each year in issue he recorded his tips daily in a notebook having a page for every day of the year. Petitioner claimed that he delivered the notebook to the person who filled out his return for the particular year, that each year's notebook was returned to him, but that subsequently his records and other belongings were stolen by his roommate *270 and never returned. We find all of the foregoing to be credible. Nevertheless, we have found as a fact that the amounts reported as tips on petitioner's returns were less than the amounts of tips actually received by petitioner. We based this finding primarily upon evidence, introduced by both petitioner and respondent, which established receipt by petitioner of larger amounts of tips than those reported. We also relied upon the patent improbability of petitioner's tips for three consecutive years being exactly $200, $800, and $1,500. Petitioner's inability to produce records of his tip income justifies respondent's use of a formula to determine tip income earned at Whyte's downtown. Anson v. Commissioner, supra. The basic validity of the formula herein used by respondent was established in Barry Meneguzzo, supra.That case is controlling here. However, as in the Meneguzzo case itself, we feel that a minor adjustment is required in the application of the formula to the facts of the instant case. Petitioner had a very poor station at Whyte's during the years in question. Moreover, he was an unusually poor waiter in comparison to the other waiters at Whyte's. *271 Even though respondent adjusted his formula to make allowance for below-average tips received by individual waiters because of poor stations, inefficiency, and the like, we believe a further adjustment is required by the facts of this case. Applying the principles of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we hold that respondent's determination of petitioner's tip income from Whyte's downtown is excessive in the amount of $200 for 1958 and $400 for 1959. In all other respects, respondent's determinations of petitioner's tip income from Whyte's is sustained. We have made findings of fact as to the amounts of tips received by petitioner from his work at places other than Whyte's. These findings effectively dispose of all questions as to petitioner's tip income from such restaurants and clubs. The only one of such findings which warrants discussion is that pertaining to The Round Table. Petitioner estimated that $800 or $900 of the $1,500 tips he reported in 1959 were earned at The Round Table. This indicates that petitioner's tips from The Round Table were more than his tips from Whyte's, i.e., more than $1,385. We gave substantial weight to this evidence *272 in reaching our finding that petitioner received tips of $1,600 from The Round Table, although we also considered petitioner's testimony as to customers served, average tips, type of restaurant, and petitioner's inexperience. Petitioner contends that respondent erred in determining additions to tax under section 6653(a). [2] Respondent argues that petitioner's failure to produce records of his tip income requires us to sustain the penalty, citing Carroll F. Schroeder, supra. Since we have found that petitioner did keep records, but that the records were stolen, respondent's argument cannot be sustained. However, we have also found that petitioner understated his tip income. If such understatements resulted from inaccuracies in petitioner's records, petitioner was negligent in keeping such records. If, on the other hand, the understatements were caused, intentionally or otherwise, by the persons who prepared petitioner's returns, petitioner was negligent in failing to detect and rectify the discrepancies between his records and his returns. American Properties, Inc., 28 T.C. 1100, 1116 (1957), affirmed per curiam 262 F. 2d 150 (C.A. 9, 1958); *273 Harold B. Franklin, 34 B.T.A. 927, 941 (1936).in either event, the imposition of the negligence penalty was proper. Petitioner has not carried his burden of proving error in respondent's determination. Of the itemized deductions disallowed by respondent for lack of substantiation, petitioner has put in issue only those claimed for union dues and work clothing. Petitioner has not shown that he incurred expenses of this nature in amounts exceeding the standard deductions allowed by respondent; it follows that he has not been prejudiced by the disallowance of these items. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise stated, all statutory references are to the 1954 Code as applicable during 1957-1959. As to whether the negligence penalty should be considered to have been put in issue by petitioner, see Barry Meneguzzo, 43 T.C. 824↩ (1965).
2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩